THE STATE EX REL. HORACE G. SCOFIELD *vs.* WILLIAM W. STARR.

Third Judicial District, New Haven, January Term, 1906.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

An appointment required by the charter of a city to be made by its common council by ballot, can be made only in that way; but in the manner of taking the ballot, and in all other matters relating to the completion of its choice, the common council proceeds as a legislative body and with the discretion and powers belonging thereto.

If more ballots are cast than there are members voting, the body may either decide to continue to ballot until a result is reached that is free from all taint or suspicion of unfairness, or, if the ballots improperly cast could not change the result, that balloting may be treated as decisive; and unless this discretion is abused, the course actually followed and the appointment resulting therefrom will be upheld.

Argued January 17th—decided March 8th, 1906.

INFORMATION in the nature of *quo warranto* to determine the respondent's title to the office of city surveyor of Bridgeport, brought to and tried by the Superior Court in Fairfield County, *Shumway, J.,* upon the respondent's demurrer to the replication; the court sustained the demurrer and rendered judgment for the respondent, from which the relator appealed. *No error.*

The charter of the city of Bridgeport provides that the common council shall consist of the mayor and twenty-four aldermen ; that the mayor shall preside at the meetings of the common council; that all elections or appointments within the gift of the common council shall be by ballot, and that the person receiving a plurality of ballots shall be elected; that the common council shall have power to pass ordinances relative to the election of city surveyor, also relative to the removal of any officer for corruption or misfeasance. Special Laws of 1895, p. 515 ; id. 1901, p. 1202.

An ordinance of the city provided that the common council in March, 1899, and triennially thereafter in the same month, should elect a city surveyor, who should hold his office for three years. On March 20th, 1905, the common council, at a meeting warned for the purpose, duly elected a city surveyor for the term of three years. At this meeting there were four ballots taken. Upon the first ballot Horace G. Scofield (the relator) received a plurality of ballots ; upon the second and third ballots no one received a plurality ; upon the fourth ballot William W. Starr (the respondent) received a plurality. Starr accepted the office, duly qualified, and entered upon the performance of its duties.

The State's Attorney filed this information alleging the election of Scofield, that Starr usurps the office of Scofield, and praying process against Starr requiring him to answer by what right he claims to hold said office. The plea of the respondent denies the election of the relator, alleges that at said meeting the common council, in the proceedings to elect a city surveyor, voted by ballot four times ; that the first vote was irregular, in that twenty-five ballots were cast, one of which was blank, whereas but twenty-four persons were present who were entitled to vote (exclusive of the mayor who did not vote) ; that because of said irregularity no person was announced or declared elected by the mayor presiding ; that upon the fourth vote by ballot, in which twenty-four ballots were cast by the aldermen, thirteen were cast in favor of the respondent and eleven in favor of the relator, and thereupon the mayor presiding declared the respondent elected, and thereupon the respondent accepted the office, duly qualified, and entered upon its duties. The plea further recites in detail the facts alleged to have occurred from the commencement to the close of the process of voting by ballot, including the fact that upon the first vote one blank and twenty-four ballots were cast, of which thirteen were for the relator and eleven for the respondent.

In his replication the relator admits that four ballots

were taken before any person was declared elected by the mayor presiding; that upon the fourth ballot the mayor did announce and declare the respondent elected, and that the respondent duly qualified and entered upon the duties of the office. He admits the details of the proceeding substantially as recited in the plea, except as to a blank ballot being cast upon the first vote, and this is denied; subsequently the relator amended his replication by adding a fourth paragraph, by which he admits that there was among the ballots cast upon the first vote a blank piece of paper similar in appearance to said ballots, but alleges that said piece of paper was attached to the back of one of said written ballots by accident in the cutting of the ballots for said use of said aldermen, and adhered to such written ballot in such a manner that it could not be detected, and that the ballot to which it adhered was innocently cast, as the ballot of such alderman, without his knowledge or the knowledge of any person that such blank piece of paper was so attached; that said blank piece of paper was not cast by any alderman as a separate ballot, nor intended to be so cast or counted. The relator further alleges that each member of the council cast one separate, written ballot, making twenty-four lawful ballots in all, and that the tellers counted twenty-four ballots in all, thirteen for him and eleven for Starr, without said blank paper being separated from the ballot to which it adhered, and communicated that result to the mayor; but that before the mayor announced that result, one of the tellers found said piece of paper, detached it, and thereupon the mayor announced there were thirteen ballots for Scofield, eleven ballots for Starr, and one blank ballot, and that, as there were more ballots than members voting, no person had received a plurality of votes for said office as required by law; and that thereupon, against the protest of members of said council, another and other ballots were taken, as set forth in the respondent's plea.

The respondent demurred " to so much of the fourth paragraph of the amendment of the replication, dated June 20, 1905, as in substance alleges that a blank ballot was inno-

cently and ignorantly cast by a member of the common council."

The appeal assigns error in sustaining the demurrer, and in holding that it was within the power of the common council to disregard the first ballot and proceed to further ballots.

*Stiles Judson* and *William A. Redden*, for the appellant (relator).

*Goodwin Stoddard* and *James A. Marr*, for the appellee (respondent).

HAMERSLEY, J. No question is made as to the form of .the demurrer, which is directed to the allegation that the blank ballot was innocently and ignorantly cast by a member of the common council ; and we do not consider questions neither specifically assigned as error nor referred to in argument.

The appointment of an officer once made cannot be revoked by the appointing power, unless permissible under the power of removal. This is true of appointments made by a single executive, an executive board, a court, or a legislative body or board. But until the appointment is made the manner of its expression is within the control of the appointing body. It is manifest that the will of an executive may be expressed in a manner different from that of a court or a legislative body. Wherever the appointing power is vested, the exercise of discretion in the manner of making and completing the appointment may be affected by the particular law by which it is authorized. The law may direct how an executive may make an appointment, and so it may direct how a legislative body may make an appointment. When this is done, the law controls ; but within the limits of the direction, the executive exercises discretion in a manner appropriate to executive action, and the legislative body in a manner appropriate to the action of such body. When an appointment is vested in a legislative body with direction to

make its choice by ballot, the appointment can be made only by ballot; but in the manner of taking the ballot, and in all other matters relating to the completion of the choice, the body proceeds as a legislative body having the discretion and powers (subject only to the limitation) belonging to such body. The direction that a legislative body shall proceed by ballot does not change the appointment into an election, as that word is used to express a choice of an officer by the people, or by an indeterminate and changing class of voters. The rules applicable to a popular election are not applicable to an appointment or election of an officer by ballot by a legislative board, such as the common council in this case, unless indeed the conditions peculiar to the latter call for the application of similar rules. Our legislation, in the establishment of city governments, speaks indifferently of the selection by the municipal legislature of officers as a " choice," " appointment," or " election." We think the Bridgeport city charter, in authorizing the office of city surveyor, has vested the power of appointing that officer in the common council, proceeding in a manner appropriate to a legislative body, and subject only to the direction that the choice shall be by ballot, upon which ballot a plurality of votes shall express the will of the body. When a legislative body expresses its will by ballot, its act is not complete before the result of the ballot is ascertained and made known. When this is done, and it appears clearly from the announcement of the state of the vote that the number of ballots requisite to an appointment has been lawfully given for one person and no further action is taken, the will of the body is finally expressed and the appointment is complete. It is not lawful afterward and without any reason to revoke such an appointment and appoint another person. *State ex rel. Coogan* v. *Barbour*, 53 Conn. 76.

In the present case the result of the first ballot was made known to the council (as alleged in the State's replication) as follows: There are more ballots than members voting, thirteen ballots are cast for Scofield, eleven ballots for Starr, and one blank ballot. Such announcement could not com-

plete the action of the council; there was something more for it to do: the exercise of discretion and power. It could accept that result as electing Scofield, or it could continue to ballot until a result was reached free from the suspicion arising from the casting of more ballots than there were persons voting. It is true that a blank ballot, where all the ballots are lawfully cast, can have no effect under the plurality rule upon the result. But where more ballots are cast than there are persons voting, the fact that one is a blank ballot does not repel the inference of fraud or mistake in the vote, and that inference, arising lawfully and reasonably from the state of the vote as made known to the council, justifies the exercise of discretion in taking another vote participated in by all the members. We are referred to no reported cases precisely analagous. Upon principle it seems to us clear that the common council, upon discovering that more ballots, including one blank ballot, had been cast than there were persons voting, had the power to exercise its discretion whether to make an investigation then and there, which might require each member to declare how he voted, or to assume that the evident irregularity was harmless, or to exclude all suspicion of fraud by allowing each member to again cast his ballot; that in pursuing the latter course the council reasonably exercised its power as a legislative body in expressing its will by ballot; that this course was properly taken by each member participating in another ballot; and that having thus exercised its discretion, the process of appointing or electing a city surveyor by ballot was not completed until the result of the ballot appointing the respondent was ascertained as admitted by the pleadings. *Baker* v. *Cushman,* 127 Mass. 105; *State* v. *Phillips,* 79 Me. 506; *Wood* v. *Cutter,* 138 Mass. 149.

It follows that the allegations of the replication stating facts tending to show that the blank ballot was ignorantly and innocently cast and was harmless, and alleging that in fact the twenty-four aldermen and no others cast the ballots received, were immaterial. The decisive question was not whether an appointment under the first ballot would have

been valid if no further steps had been taken after the an-
nouncement of the state of vote upon that ballot, but whether
the council had the power, upon that announcement, to take
another ballot.    The trial court correctly held, upon the
facts admitted by the pleadings, that the council had this
power; that it was reasonably exercised; and that the ap-
pointment or election by ballot was not completed until the
ballot upon which the respondent received a plurality of
votes was taken and the result announced.

There is no error in the judgment of the Superior Court.

In this opinion the other judges concurred.