STATE EX REL. FREDERICK J. RUNDBAKEN *v.* HAROLD K. WATROUS

STATE EX REL. JOHN P. COTTER ET AL. *v.* ARTHUR L. SHIPMAN, JR., ET AL.

STATE EX REL. FRANK J. MONCHUN *v.* RAYMOND W. SMITH

STATE EX REL. DOMINIC W. CELOTTO ET AL. *v.* B. FRED DAMIANI ET AL.

MALTBIE, C. J., INGLIS, WYNNE, DALY AND SHEA, JS.

Argued July 25—decided August 1, 1949.

*William S. Gordon, Jr.,* with whom were *Leo Parskey* and, on the brief, *John D. LaBelle* and *James L. Montgomery,* for the plaintiffs in the first three cases and the defendants in the fourth.

*Joseph E. Klau,* with whom, on the brief, were *John P. Cotter* and *Paul M. Palten,* for the plaintiffs in the second case.

*Hugh M. Alcorn, Jr.,* for the defendants in the first three cases and the plaintiffs in the fourth, and *Benjamin Hinman,* for the defendants in the second case.

*Charles G. Albom* appeared for the plaintiffs in the fourth case.

MALTBIE, C. J.   The actions now reserved to us were brought to determine whether the plaintiffs or the defendants in the several cases are lawfully entitled to hold office as judges of certain municipal courts.   Section 3 of article fifth of the constitution of this state provides in part: "The judges of the Supreme Court of Errors, of the superiour and inferiour courts, and all justices of the peace, shall be appointed by the General Assembly, in such manner as shall by law be prescribed."   After fixing the terms and providing for the impeachment or removal of judges of the Supreme and Superior Courts, it stated: "All other judges and justices of the peace shall be appointed annually."   An amendment to the constitution, adopted in October, 1876, contained this provision: "Judges of the city courts and police courts shall be appointed for terms of two years." Conn. Const. Amend. XX.   Until De-

cember 16, 1948, when the forty-seventh amendment to the constitution became effective, these constitutional provisions required judges of city and police courts to be appointed by the General Assembly for terms of two years. In 1889, a statute which had previously regulated the procedure to be followed by the General Assembly upon the nomination of judges of Courts of Common Pleas was extended to include every nomination of a judge of any "city, police, or borough court." General Statutes, Rev. 1888, § 754; Public Acts, 1889, c. 42. In the Revision of 1902, § 56, the statute was made applicable to every judge of a "city, police, town, or borough court," and that provision has been continued ever since. Rev. 1949, § 72. The unbroken practice of the General Assembly, at least since 1902, has been to treat judges of all courts having primary jurisdiction over criminal offenses, whether called city, town, borough or police courts, as being within the designation in the constitution "city courts and police courts"; and if there was any doubt that this was the true meaning to be accorded the constitutional provision, it is removed by this long practical construction. *Wheeler's Appeal,* 45 Conn. 306, 315; *Sanger* v. *Bridgeport,* 124 Conn. 183, 190, 198 A. 746. In fact, unless the twentieth amendment did include all such courts, the selection of judges for those not falling within the strict designation of "city courts and police courts" would be still governed by the provision in § 3 of article fifth, "All other judges . . . shall be appointed annually"; but annual appointments of judges of any municipal court have not been made since 1876. The twentieth amendment to the constitution limited the terms of all judges of municipal courts to two years.

Since 1889 the procedure for the appointment of such judges has been regulated by statute. General

Statutes, Rev. 1930, §§ 50, 51; Cum. Sup. 1935, § 9c; Rev. 1949, §§ 72, 73. In 1935 the statutes were amplified to include a provision that on and after July 1, 1935, each judge, associate judge or deputy judge of a town, city, borough or police court "shall be appointed for a term of two years from July first in the year of his appointment"; Cum. Sup. 1935, § 10c; and this provision is still in effect. Sup. 1947, § 24i; Rev. 1949, § 76. There has never been any special statutory provision for filling vacancies in these courts, but there has long been a general provision authorizing the governor to fill vacancies. Since 1931 a statute has provided as follows: "When the general assembly shall not be in session and when no other provision shall have been made for filling any vacancy in an office originally filled by the general assembly or either branch thereof, or by the governor with the advice and consent of the general assembly or either branch thereof, the governor may fill the same until the sixth Wednesday of the next session of the general assembly, and until a successor shall be elected or appointed and shall have qualified. He may fill any vacancy in any office to which he has power of appointment." Sup. 1931, § 6a; Cum. Sup. 1935, § 11c; Rev. 1949, § 92. The forty-seventh amendment to the constitution provides: "The judges of minor courts, including town, city, borough and police courts, shall, upon nomination by the governor, be appointed by the general assembly for such term and in such manner as shall be by law prescribed." See Sup. 1947, p. 745.

The parties now before us fall into two classes. On one side stand certain judges appointed by the General Assembly at its 1947 session, under the provisions of the constitution and statutes then in effect, to hold office for two years from July 1, 1947, and one judge who was appointed by the governor to fill a vacancy caused

by the resignation of a judge appointed for that term at that session; and on the other side stand judges who were appointed by the governor in June of this year, after the forty-seventh amendment to the constitution became effective, to hold office from July 1, 1949. The first question we have to determine is whether the judges falling within the first class are entitled to hold office as of right after July 1 of this year.

In *State ex rel. Eberle* v. *Clark,* 87 Conn. 537, 89 A. 172, the question was whether Eberle or Clark had the right to hold office as judge of the "city police court" of Hartford. Clark had been duly appointed judge of that court by the General Assembly at its session in 1911 to hold office "for the term of two years from and after the first day of July, 1911, and until his successor is duly appointed and qualified." The General Assembly at its 1913 session failed to appoint a successor before it adjourned sine die, and on June 24, 1913, while it was not in session, the governor appointed Eberle "to fill a vacancy which will occur on the first day of July, 1913, by expiration on that day" of Clark's term. We held that the provision of the twentieth amendment that judges of city courts and police courts shall be appointed "for terms of two years" established a constitutional limitation of the term of such judges and that the General Assembly had no power to extend it by the provision that Clark should serve until a successor was appointed and qualified, nor could that result be legally brought about by a like provision in the city charter. This decision establishes as our law that, as the constitution stood until the adoption of the forty-seventh amendment, judges appointed by the General Assembly ceased to hold office as of right at the conclusion of their two-year term.

Our decision in *State ex rel. Eberle* v. *Clark,* supra,

also establishes the fact that the governor, under the provisions of chapter 233 of the Public Acts of 1907, the predecessor of § 11c of the 1935 Cumulative Supplement, which we have quoted, and its successor, § 92 of the 1949 Revision, has the right to appoint a judge to fill a vacancy arising from the death or resignation of a judge appointed by the General Assembly. The judge, a party to this case, who was so appointed on May 1, 1948, held office thereafter as of right for the legal term. His commission, following the language of § 11c, reads that he is to hold office "until the sixth Wednesday of the next session of the General Assembly and until his successor shall be appointed and shall be qualified." One appointed to fill a vacancy holds office only until the expiration of the term established for the person whose place he takes. *Donovan* v. *Board of Labor & Industries*, 225 Mass. 410, 413, 114 N. E. 679; *Marvel* v. *Camden County*, 135 N. J. L. 575, 577, 53 A. 2d 371; *State ex rel. Ross* v. *Carroll*, 133 Wash. 549, 556, 234 P. 22; 46 C. J. 976; see *State ex rel. Rylands* v. *Pinkerman*, 63 Conn. 176, 189, 28 A. 110; *State ex rel. Mathewson* v. *Dow*, 78 Conn. 53, 56, 60 A. 1063; *Cummings* v. *Looney*, 89 Conn. 557, 561, 95 A. 19. The limitation of the term under the appointment in question to the sixth Wednesday of the next session of the General Assembly was obviously for the purpose of enabling it to proceed to fill such a vacancy for the remaining portion of the term, and the provision that the governor's appointee should serve until a successor was appointed and had qualified was to meet the possibility that the General Assembly would not take such action on or before the sixth Wednesday of its session. We recognize that, in thus interpreting the effect of the appointment, we may be in disagreement with certain things we said in our opinion in *State ex rel. Mathewson* v. *Dow*, supra. The judge appointed in

1948 to fill the vacancy could hold office of right only until the General Assembly made an appointment at its 1949 session or, if it failed to act, as was the case, until the expiration, on June 30, 1949, of the term of the judge whose place he took. If, as is claimed in his behalf, his appointment continued as of right until the General Assembly appointed a successor, his term might well exceed the constitutional limitation of two years in effect when he took office.

Under the constitution and statutes as they stood when the judges before us were appointed by the General Assembly at its 1947 session or, in the case of the vacancy, by the governor in 1948, their terms could not of right extend beyond June 30, 1949.

It is, however, contended in their behalf that the forty-seventh amendment, as applied to the statutes in effect thereafter, essentially changed the situation. That amendment, as we have said, became effective on December 16, 1948. The argument is that it abrogated the twentieth, and that the length of the terms of office of the judges appointed by the General Assembly in 1947, and by the governor in 1948 to fill the vacancy, was to be determined by the statutes then and subsequently in effect. Sec. 95e of the Cumulative Supplement of 1939 provided: "Unless otherwise specifically provided by law, each person appointed or nominated for appointment by the governor, with or without the advice and consent of the general assembly, or either house thereof, and each person appointed or elected by the general assembly, or either house thereof, shall be sworn and shall hold office for the term prescribed by law and until his successor shall be appointed and shall have qualified. Such persons shall receive no compensation for services unless the same shall be prescribed by law, but shall receive their actual and necessary expenses incurred in the performance of their

official duties." By act of the General Assembly, a new revision of the General Statutes became effective on January 15, 1949; Public Acts, 1949, No. 1; and § 95e was incorporated in it. Rev. 1949, § 260. The argument is that after the forty-seventh amendment became effective the limitation of the terms of the judges of municipal courts to two years was abrogated and the statute quoted had the effect of extending their terms, so that they are entitled to hold office until successors have been duly appointed and have qualified. If this be the effect to be given the amendment and the statutes, these judges would continue to hold office as of right until successors have been appointed by the General Assembly upon nomination of the governor, and there were no vacancies which he could fill. *State ex rel. McCarthy* v. *Watson,* 132 Conn. 518, 527, 45 A. 2d 716.

The decisive question on this phase of the case is: Do § 95e and its successor, § 260, apply so as to extend the terms of these judges? The language of that statute clearly looks to the future. It provides that each person nominated or appointed by the governor "shall be sworn and shall hold office for the term prescribed by law and until his successor shall be appointed and shall have qualified." The language is that which would be adopted if the statute was intended to apply only to future appointments. The provision that any person nominated or appointed "shall be sworn" is of particular significance; whether or not the statute was, as argued before us, intended to affect only executive offices and not judicial, it would have its broader and has had its more frequent application to state officers in the executive department. These officers must, "before they enter on the duties of their respective offices, take" a prescribed oath; Conn. Const. Art. 10 § 1; and it would be strange indeed if, by the application of the

statute to those already executing their offices, they would be required to take a new oath. That aside, when the statute was first enacted and until the forty-seventh amendment became effective, it could not have applied to appointments of judges of municipal courts, because of the constitutional limitation of their terms, and we must assume that the legislature did not intend that it should affect those terms, because that would be an attempt to bring about an unconstitutional result. *State* v. *Muolo,* 119 Conn. 323, 330, 176 A. 401. When § 95e of the Cumulative Supplement of 1939 became § 260 of the Revision of 1949, in the absence of anything evincing a contrary intent, the meaning and effect of the statute were unchanged. *Bassett* v. *City Bank & Trust Co.,* 115 Conn. 393, 400, 161 A. 852. To give the statute the effect of extending the terms of officers who had been appointed under constitutional and statutory provisions which established a fixed term would make it operate retrospectively, and statutes affecting substantial changes in the law are not to be construed to have such an effect unless the intent is clear. *Massa* v. *Nastri,* 125 Conn. 144, 146, 3 A. 2d 839; *State* v. *Jones,* 132 Conn. 682, 684, 47 A. 2d 185. That principle is particularly applicable in a situation where it is claimed that the adoption of a constitutional amendment makes valid the application of an existing statute to a certain situation which previously could not constitutionally be within its scope. See *Banaz* v. *Smith,* 133 Cal. 102, 104, 65 P. 309. To interpret § 95e and its successor, § 260, as becoming applicable to change the terms of judges after the forty-seventh amendment became effective would be to violate established rules for determining the meaning and effect of statutory provisions.

The judges appointed at the 1947 session of the General Assembly contend that § 260 should be construed

as applying in any situation where an officer's regular term expires without a successor having been duly appointed. If that had been intended, we should expect to find some indication of it in the language of the statute; for example, it would naturally have begun: "Unless otherwise specifically provided by law, each person who has been or shall be appointed or nominated. . . ." We cannot interpret the statute otherwise than as effective to fix a term of office ab initio. In *State ex rel. Ryan* v. *Bailey,* 133 Conn. 40, 48 A. 2d 229, an officer was appointed in 1941 under a statute (Rev. 1930, § 2220) which provided that the governor, with the advice and consent of the senate, should make the appointment for a term of four years, without provision for continuance until a successor was appointed and qualified; § 95c, which later became § 260 of the Revision of 1949, was in effect at the time of the appointment; we held that under its provisions, on failure of the senate at its 1945 session to approve a nomination of a successor, the incumbent continued in office and there was no vacancy which the governor could fill. We traced the history of § 95e and said (p. 46): "These facts, in the light of the sequence of events which they manifest, are strongly indicative that the intent of the legislature in adopting § 95e was so to amend § 2220, together with the other statutes in which no extension of the term was specifically provided, as to eliminate the possibility of there being no de jure officer upon such a failure of appointment as we have recited." Section 76, Rev. 1949, as we have noted, provides that each judge, associate judge or deputy judge of a town, city, borough or police court "shall be appointed for a term of two years from July first in the year of his appointment." Treating § 260 as an amendment to that statute, it would read that every such judge shall be appointed for a term of two years

and until his successor shall have been appointed and shall have qualified. Had the 1949 session specifically amended § 76 so that it would contain the additional provision, it could hardly be claimed that the amended statute would apply to judges then in office.

In *State ex rel. Hendrick* v. *Keating,* 120 Conn. 427, 181 A. 340, the plaintiff brought a quo warranto proceeding in which he claimed the right to continue in office after the expiration of the fixed term set in the statute by reason of a further provision that the term should continue until a successor had been appointed and had qualified; he had taken office on July 1, 1929; the rather peculiar provisions of the statute (Public Acts, 1927, c. 297, § 1) were changed in the 1930 Revision of the General Statutes (§ 156) and the holdover provision took the usual form, but we held (p. 439) that the rights of the plaintiff were determined by the act of 1927 under which his appointment was made. A like conclusion was reached in *Spencer* v. *Middlesex Tax Board,* 95 N. J. L. 5, 9, 111 A. 640. So, in this case, the rights of the judges appointed previous to the time when the forty-seventh amendment became effective expired on June 30, 1949, and in any performance of their duties thereafter they were acting, not as de jure, but as de facto judges. On July 1, 1949, there were vacancies in the offices which the governor had the right to fill. *State ex rel. McCarthy* v. *Watson,* 132 Conn. 518, 527, 45 A. 2d 716.

There remains the question whether the judges appointed by the governor in June, 1949, for the purpose of filling the vacancies occurring on July 1, 1949, have a right to hold office in view of certain circumstances connected with those appointments. It is argued that the governor had no right to make the appointments as he did.

It is claimed in the first place that the General As-

sembly was still in session when the governor made the appointments and that a condition necessary to give him that power had not occurred. The governor acted under the provisions of § 92 of the Revision of 1949, which we have quoted above, and which, as we have said, authorizes him to make appointments to fill vacancies in the offices of municipal judges. The section limits its application by the phrase at its beginning, "when the general assembly shall not be in session," and it is argued that when the governor acted in these cases the General Assembly was in session.

It would serve no purpose to review the proceedings of the General Assembly at its sessions in 1949 in any detail in an attempt to place the blame for the unusual course it took. In accordance with the mandate in the thirty-fifth amendment to the constitution, the regular session adjourned sine die on June 8, 1949. On June 10, 1949, the governor issued a proclamation calling a special session to be convened on June 14, 1949, and specifying certain matters upon which he stated it was "imperative" that the General Assembly should act. The General Assembly met on that day and adopted a joint resolution, including a provision that "no bill or joint resolution shall be received unless the subject matter thereof is specifically set forth in the call of the Governor for this special session, and shall deal only with the financing of such matters." Both senate and house were in session upon a number of days following the convening of the assembly. On June 30, the following motion was made in the senate: ". . . when the Senate adjourns today, that it adjourn without date (sine die) and that the president be authorized and empowered to appoint a committee of three Senators to advise the House of this action on the part of the Senate and request concurrent action of the House with the Senate on this time of final adjournment; the

Senate being willing, if the House desires, to meet with the House in joint convention for this purpose." The question was on motion divided into two parts, one concerning the adjournment and the other the notification to the house of representatives, and both motions were passed; the president of the senate appointed a committee to notify the house; a motion was then made that the senate adjourn sine die; and at 3:58 p. m. it was passed. The committee appeared in the hall of the house and informed it that the senate had adjourned sine die and invited the house to meet in joint session for the purpose of adjournment; the house took no action on that invitation but at 4:10 p. m. recessed until 11:30 a. m. on July 6, 1949; and the senate committee never reported back to the senate, nor did the house make any official communication to the senate regarding any disagreeing action. At 4:45 p. m. on June 30 the governor issued a proclamation; it recited, among other matters, that "there is disagreement between the two Houses of the General Assembly respecting the time of adjournment"; and it contained the statement: "Therefore, by authority vested in me under the Constitution of Connecticut, I hereby adjourn, without date, the Special Session of the General Assembly. . . ." On June 29 and 30, while both houses of the General Assembly were in session, the governor, in the words used in the stipulation in these cases, "selected" each of the judges who in this action are claiming office by virtue of a vacancy appointment by him, and "caused such selection to be publicly announced." Sometime after 4:45 p. m. on June 30 the governor signed commissions appointing them judges to fill vacancies "from July 1, 1949, until the sixth Wednesday of the next session of the General Assembly and until a successor shall be appointed and shall have qualified."

The constitution provides that the General Assembly shall consist of two houses or branches, the senate and the house of representatives; the "style of their laws" shall be "Be it enacted by the Senate and House of Representatives in General Assembly convened"; and bills are to be presented to the governor for his approval or disapproval only when passed by both houses. Conn. Const. Art. 3 § 1; Art. 4 § 12. It is necessarily implied in these provisions that agreement of both houses on any proposed legislation is required before it can become law. Where the constitution or a statute imposes a duty upon the General Assembly to make appointments, as in the case of judges of municipal courts, the General Assembly is not legislating; but the same requirement of agreeing action is necessary. *State ex rel. Scofield* v. *Starr,* 78 Conn. 636, 639, 63 A. 512. The constitution also contains provisions concerning the separate organization of the two houses and authorizes each to adopt "rules of its own proceedings." Conn. Const. Art. 3 §§ 7-9. Neither the constitution nor the statutes require the General Assembly to meet in joint session either at its convening or at its adjournment; but certainly for more than one hundred years, and probably ever since the adoption of the constitution, it has been the custom to hold such joint sessions. Senate Journal, 1840, p. 87. For many years, also, the two houses have adopted joint rules, and without searching out past history it is sufficient for our present purposes to point out that the only provision in those rules for the 1949 session concerning joint conventions is: "Whenever the public business may require the Senate and House of Representatives to meet in Convention, either House may send its message to the other, requesting such Convention and specifying the object," with further provisions concerning the procedure to be followed if such a joint con-

vention is held. Roll, Committees & Rules of General Assembly, 1949, p. 96. The joint rules also contain (p. 106) a provision as to the composition and method of procedure of committees of conference on disagreeing votes in the houses; but if we assume that votes taken in the separate houses as to adjournment, which does not require joint action, fall within the rule, there is no obligation placed on either house to ask for or appoint such a committee.

We do not need to decide whether, in general, an adjournment of one house sine die can bring a session of the General Assembly to an end. The adjournment of the senate sine die terminated, at least for the time being, any possibility of action by the General Assembly in which both houses must concur, and that would include the appointments now in question. The events leading up to the appointments by the governor occurred on the last day of the legal term of the judges who were appointed at the 1947 session of the General Assembly, and after that day they could not hold office as of right. Unless the governor could then appoint to fill the vacancies which would occur the next day, there would then and thereafter be no de jure judges of these courts, and there would be two sets of judges each of which could with equal reason claim to be de facto officers. Section 92 was intended to prevent a situation where there would be no de jure officer filling a public office. It would be placing too narrow a construction upon the words "when the general assembly shall not be in session" to hold that in the situation presented in this case the General Assembly was in session as far as the power of the governor to act under § 92 is concerned.

We do not need to consider whether the governor had the right thereafter by his proclamation to adjourn the General Assembly sine die under the constitutional

provision: "The Governour, in case of a disagreement between the two houses of the General Assembly, respecting the time of adjournment, may adjourn them to such time as he shall think proper, not beyond the day of the next stated session." Conn. Const. Art. 4 § 7.

It is stipulated that on June 29 and 30, while the General Assembly was still in session, the governor "selected" the persons to be appointed as judges and "caused such selection to be publicly announced" and that sometime after 4:45 p. m. on June 30 he executed commissions appointing them to the offices. Where by constitutional, statutory or other legal provision, it is required that certain steps be taken to make an effective appointment, the general rule is that the appointment becomes complete, beyond the possibility of recall, when the last of the prescribed steps is taken. *State ex rel. Coogan* v. *Barbour,* 53 Conn. 76, 85, 22 A. 686, following the decision of Chief Justice Marshall in *Marbury* v. *Madison,* 1 Cranch (5 U. S.) 137, 2 L. Ed. 60; *State ex rel. Scofield* v. *Starr,* 78 Conn. 636, 640, 63 A. 512; 2 McQuillin, Municipal Corporations (Rev. 2d Ed.) § 484. There are, however, with regard to vacancy appointments by the governor under § 92, no requirements as to the method which shall be followed. The governor issued commissions to his appointees, but the only statutory requirement as to commissions is that the governor shall issue them when it is necessary; General Statutes, Rev. 1949, § 97; and none are required in the case of vacancy appointments of municipal judges. Where no method of appointment is provided, an appointment does not become effective beyond recall until the appointing officer by some act or word evinces a final intent to vest the appointee with title to the office. In *People ex rel. Babcock* v. *Murray,* 70 N. Y. 521, 524, it is said:

"It would be unfortunate if the title to office of one upon whose official acts public interests and private rights hinged, did or could be made to depend upon the verbal declarations and statements of the person having the power to make the appointment, to be proved by parol and liable to be forgotten, misunderstood or misreported, subject to all the contingencies and infirmities which are incident to verbal evidence, or evidence by parol, so pregnant of mischief and misfortune as to have led to the enactment of the statute of frauds." And the principle is stated (p. 525): "Affecting the public, and not merely private rights, and being done under the authority of the sovereign power and not under individual authority, [the appointment] should be authenticated in a way that the public may know when and in what manner the duty has been performed." See also *Johnson* v. *Sampson*, 232 Ky. 648, 655, 24 S. W. 2d 306; 42 Am. Jur. 958, § 101. With the reasoning in support of that principle we agree. The mere fact that, in these cases, the governor had "selected" the persons he intended to appoint and publicly announced those selections did not constitute appointment. The commissions, though not necessary, were definite acts evincing his intent to vest title to the offices in those to whom they were issued, and certainly not before they were issued did the appointments become effective and beyond recall by him. The commissions were issued after 3:58 p. m. on June 30, when the senate adjourned sine die. At that time the governor had the power to make the vacancy appointments.

Moreover, we cannot agree that the governor was under any duty to submit to the General Assembly nominations for the judges of the municipal courts. The forty-seventh amendment provides that the judges whom the governor nominates shall be appointed by

the General Assembly for such term and in such manner as shall be by law prescribed. The amendment was not self-executing but could become effective only when the General Assembly had fixed the term of the judges and manner in which the appointments were to be made. The body of statutory law which became the Revision of 1949 was approved and the effective date set as January 15, 1949, at a special session of the General Assembly held in February, 1948; Public Acts, Spec. Sess. Feb. 1948, Nos. 4, 5; and the commission engaged upon it was authorized to include the public acts passed at that session and a special session held in August, 1948. Public Acts, Spec. Sess. Feb. 1948, No. 4; Public Acts, Spec. Sess. Aug. 1948, Nos. 7, 8. When the revision was approved in 1948, the forty-seventh amendment had not been adopted and § 9c of the 1935 Cumulative Supplement and § 51 of the Revision of 1930 were properly included in the 1949 Revision as §§ 72 and 73. These sections provide: "Sec. 72. Judges of municipal courts. Each nomination made in either branch of the general assembly for a judge of any town, city, borough or police court shall be by a resolution making such appointment, which resolution shall lie upon the table and be printed in the calendar of the house where it is introduced for three successive legislative days after its introduction, and shall thereupon be referred, without debate, to the committee on the judiciary. Sec. 73. Ballot, when required. Each appointment of a judge of any of said courts shall be by concurrent resolution, and the action upon the passage of each resolution in each branch of the general assembly, except a resolution relating to the appointment of a judge of a town, city, borough or police court, shall be by ballot, upon which shall be written or printed the word 'yes' or 'no,' and no reso-

lution shall contain the name of more than one nominee."

From a mere reading of these sections it is apparent that they were, as regards judges of municipal courts, intended to effectuate the provisions of the twentieth amendment, wherein the power of appointment of municipal court judges was given to the General Assembly without any requirement of a nomination by the governor. The provision that "each nomination . . . shall be by a resolution making such appointment" can only refer to a resolution offered by a member of one of the houses and cannot apply to the submission of a nomination by a governor, who has no right to offer resolutions in the General Assembly. The conclusion that the statute does not apply to nominations submitted by a governor is placed beyond doubt by these further considerations: The constitution before the adoption of the forty-seventh amendment provided and still provides that judges of the Supreme, Superior and Common Pleas Courts "shall, upon nomination of the governor, be appointed by the general assembly in such manner as shall by law be prescribed." Conn. Const. Amend. XLI. In contrast to the provisions of §§ 72 and 73 as to the method of appointing municipal court judges, § 71 provides: "Each nomination made by the governor to the general assembly for a judge of the supreme court of errors, superior court or courts of common pleas shall lie upon the table and be printed in the calendar of the house where it is introduced, for three consecutive legislative days after its introduction, and shall thereupon be referred, without debate, to the committee on the judiciary, which shall report thereon within fifteen legislative days from the time of reference, but before the adjourning of the general assembly." Sections 72 and 73 cannot be construed as establishing "the manner" in which the General Assem-

bly shall appoint judges under the forty-seventh amendment. Until it had made such a provision, there was no obligation upon the governor to submit nominations to it under that amendment. The case of *Pratt* v. *Allen,* 13 Conn. 119, merely held that the General Assembly might properly, before a constitutional amendment providing for the election of certain officers in such manner as should be prescribed by law became effective but in anticipation of it, make the necessary provisions; and the decision is not in point as regards the issue before us.

We have not followed all the ramifications of the very able and extensive arguments made and briefs submitted to us, remarkable in view of the fact that the cases came into the Superior Court less than three weeks, and the reservation was made only ten days, before we heard them. In particular, we have found no need to consider the unusual situation presented by the case involving the judges of the municipal court in Hartford, arising out of the fact that under a new charter, the relevant provisions of which took effect on July 1, 1949, a single city and police court was created in place of the two separate courts which had previously existed; nor are we required to consider the question whether a governor who fails in his duty to submit nominations to the General Assembly loses his power to fill any vacancy which may occur by reason thereof.

The nineteenth and twentieth questions propounded in the reservation concern the rights of certain persons to hold office as prosecutors and clerks of one of the courts, but as they are not parties to the action involving the title to the offices of judge of that court, we do not consider these questions.

No sufficient purpose would be served by giving specific answers to the first eighteen questions propounded in the reservation; we advise the Superior

Court that the judges appointed by the General Assembly at its 1947 session and the judge appointed to fill a vacancy due to the resignation of a judge so appointed ceased on June 30, 1949, to hold office as of right, and as of July 1, 1949, the judges appointed by the governor to fill vacancies in those offices hold them as of right. Questions nineteen and twenty we do not answer.

No costs will be taxed in this court to any party.

In this opinion the other judges concurred.