STATE EX REL. D. HAROLD COTTER ET AL. *v*. BENJAMIN LEIPNER ET AL.

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and WYNNE, Js.

Argued July 21—decided July 30, 1951.

*Hugh M. Alcorn, Jr.,* and *George C. Conway,* attorney general, with whom were *William L. Beers,* deputy attorney general, *John R. Thim* and *Henry P. Bakewell,* for the plaintiffs.

*William S. Gordon, Jr.,* with whom were *Leo Parskey, John D. LaBelle* and, on the brief, *Mary C. Fitzgerald, Stephen M. Riley* and *William P. Aspell,* for the defendants.

INGLIS, J.   This action is brought to determine the title to the office of judge of the City Court of Bridgeport.

The following facts have been stipulated: The terms of office of the defendants' immediate predecessors (who, as it happens, were the present plaintiffs) expired under the law as it then was on June 30, 1949. The General Assembly having failed to appoint successors, there were vacancies in the office for the term commencing July 1, 1949.   The governor, after the General Assembly adjourned, acting under the authority of § 92 of the General Statutes, appointed the defendants to fill those vacancies and they accepted the appointments and took their oaths of office.   Their respective commissions, following the phraseology of § 92, stated that they were appointed judges of the City Court of Bridgeport "to fill vacancy, from July 1, 1949, until the sixth Wednesday of the next session of the General Assembly and until a successor shall be appointed and shall have qualified."

At no time since the appointment of the defendants as of July 1, 1949, has the General Assembly, upon the nomination of the governor or otherwise, appointed or attempted to appoint anyone to be a judge of the City Court of Bridgeport.   After the adjournment of the 1951 General Assembly, the governor purported to

appoint the plaintiffs judges of that court and issued to them commissions reciting that he appointed them judges "to fill vacancy, from July 1, 1951, until the Sixth Wednesday of the next session of the General Assembly and until a successor shall be appointed and shall have qualified." The plaintiffs have accepted their appointments and taken their oaths of office.

The question reserved for the advice of this court is whether the defendants or the plaintiffs have been the de jure judges of the City Court since July 1, 1951. The question determinative of the case is whether the terms of office of the defendants expired prior to July 1, 1951, so that on that date the offices were vacant. This question turns very largely upon whether the twentieth amendment to the state constitution and the statutes adopted thereunder still operate to fix the terms of office of city court judges or whether that amendment and those statutes have been superseded by the forty-seventh amendment.

Article fifth, § 3, of the Connecticut constitution provides that the judges of inferior courts, such as municipal courts, shall be appointed by the General Assembly. The twentieth amendment, adopted in 1876, directs that "Judges of the city courts and police courts shall be appointed for terms of two years." Implementing those constitutional provisions, statutes were adopted prior to 1948 prescribing the methods to be followed by the General Assembly in making appointments and specifying that each judge should be appointed for a term of two years from July 1 in the year of his appointment. General Statutes §§ 72, 73, 76. On December 16, 1948, the governor proclaimed that the forty-seventh amendment had been adopted. That amendment reads: "The judges of minor courts, including town, city, borough and police courts, shall, upon nomination by the governor, be appointed by the general assembly

for such term and in such manner as shall be by law prescribed." General Statutes, Sup. 1947, p. 745.

Constitutional provisions are not necessarily self-executing. In so far as they either expressly or by necessary implication require legislative action to implement them, they are not effective until that legislative action is had. *Brown & Co.* v. *Seay,* 86 Ala. 122, 125, 5 So. 216; *Ex parte Wall,* 48 Cal. 279, 318; *Green* v. *Aker,* 11 Ind. 223, 225; *Woodworth* v. *Bowles,* 61 Kan. 569, 574, 60 P. 331; *Detroit* v. *Oakland Circuit Judge,* 237 Mich. 446, 450, 212 N. W. 207; *State ex rel. Crumb* v. *Helena,* 34 Mont. 67, 71, 85 P. 744; *Ex parte Wagner,* 21 Okla. 33, 38, 95 P. 435; *O'Connor* v. *Armstrong,* 299 Pa. 390, 396, 149 A. 655; *Southern Express Co.* v. *Patterson,* 122 Tenn. 279, 293, 123 S. W. 353; *Newport News* v. *Woodward,* 104 Va. 58, 60, 51 S. E. 193; 1 Cooley, Constitutional Limitations (8th Ed.) p. 165. Until a constitutional amendment which is not self-executing is made effective by the requisite legislation, earlier constitutional provisions and statutes adopted under them which apply to the same subject matter ordinarily remain in full force. This is so unless they have been expressly repealed, or the new provisions are negative or prohibitory in content so that their purpose appears to be the suppression of an existing evil, or the peculiar circumstances under which the new are adopted indicate a contrary intent. *Porter* v. *First National Bank,* 96 Fla. 740, 744, 119 So. 130, 519; *Blake* v. *Board of Commissioners,* 5 Idaho 163, 165, 47 P. 734; *Leser* v. *Lowenstein,* 129 Md. 244, 252, 98 A. 712; *Opinion of Justices,* 69 Mass. (3 Gray) 601, 602, 604; *Williams* v. *Mayor of Detroit,* 2 Mich. 560, 565; *Coatesville Gas Co.* v. *County of Chester,* 97 Pa. 476, 481; *Supervisors of Doddridge* v. *Stout,* 9 W. Va. 703, 705; *State ex rel. Hudd* v. *Timme,* 54 Wis. 318, 331, 11 N. W. 785.

Examples of the application of this principle to situa-

tions closely analogous to that in the present case may be found in *Blake* v. *Board of Commissioners,* supra, and in *Opinion of Justices,* supra. In the *Blake* case, the court had before it a constitutional amendment which provided that two offices theretofore combined, so that a person elected to one held the other ex officio, should be separated and that the legislature should provide by law for biennial election to such offices. The court held that the amendment was not self-executing and that the old order of things would continue and the two offices be treated as combined until the legislature set up the machinery for carrying the amendment into effect. In the second case, the opinion of the justices was sought as to the effect of the adoption of several constitutional amendments upon pre-existing constitutional provisions. One of the amendments provided that executive councilors, who up to that time by constitutional provision had been chosen by the legislature, should be elected by popular vote, one from each of eight districts, with direction to the legislature to divide the state into such districts. Another amendment directed that the legislature should prescribe by law for the election of sheriffs, clerks of courts and other officers in the various counties by popular vote for such term of office as the legislature should prescribe. The justices unanimously expressed the opinion that neither of these amendments was effective to change either the modes of appointment to the various offices or the terms for which appointments were to be made until the legislature should implement them by the contemplated legislation. Until such legislation should be adopted it was stated that the offices were to be filled in the manner and for the terms prescribed in earlier constitutional provisions which the amendments were intended ultimately to supplant.

The case of *Badger* v. *Hoidale,* 88 F. 2d 208, relied

upon in this connection by the defendants, is not at variance with the principle we have stated. The federal court had before it an amendment to the Minnesota constitution which substituted, for a provision that corporate stockholders should be subject to double liability, a provision that the legislature should have the power to provide for and limit the liability of stockholders. On its face, the amendment seemed to be a complete substitute for the former provision. It appeared not only that the amendment as adopted had been given the same section number as the former provision but also that, as required by law, before its adoption the attorney general of the state had rendered his opinion as to the effect of the amendment. This opinion, which had wide publicity, was that the amendment would do away with double liability. The rationale of the decision was that, in view of those facts, it was clear that the people must have intended that the amendment would immediately repeal the former provision. It was on the basis of this reasoning that the court concluded that the amendment did so operate. It is generally recognized that a constitutional amendment, even if it is not self-executing, may, immediately upon its adoption, supersede a former provision if it is clear that it was the intention of the people in adopting it that it would do so. That is all that the *Badger* case holds.

The generally accepted principle that a constitutional amendment which requires implementing legislation is not effective to supersede a pre-existing constitutional provision unless it expressly repeals it, or unless its provisions establish a principle which is essentially negative or prohibitory in content, or unless it is clearly the intent of the amendment that it should, is, of course, merely an aid in the construction of any given amendment. With it as a guide, we turn now to a specific

consideration of the effect of the adoption of the forty-seventh amendment upon the twentieth. It must be borne in mind that the question is not what effect the adoption of the forty-seventh amendment had upon article fifth, § 3, of the constitution. The first part of the amendment, providing that the appointment of minor court judges shall be by the General Assembly upon nomination by the governor, might well be contended to establish a principle which negatived and prohibited appointment by the General Assembly without nomination by the governor as provided in article fifth, § 3. Whether it does and, if so, whether it acts as an immediate repeal of article fifth, § 3, it is not necessary for us to decide. We are concerned only with the effect of the adoption of the forty-seventh amendment upon the twentieth. The question now before us is whether the adoption of the forty-seventh amendment, in so far as it provides that the terms of office of minor court judges shall be prescribed by law, terminated immediately the effectiveness of so much of the twentieth amendment as provided that the term of office of those judges shall be two years.

Clearly, that portion of the forty-seventh amendment which relates to the term of office of minor court judges is not self-executing. The mere adoption of the amendment did not operate to determine what that term should be. Legislation is necessary to accomplish that end. *State ex rel. Rundbaken v. Watrous,* 135 Conn. 638, 657, 68 A. 2d 289. The forty-seventh amendment did not expressly repeal the twentieth amendment. It did not prohibit either expressly or by implication a two-year term. Under its provisions the General Assembly was free to establish two years as the term of judicial office. Accordingly, it cannot be said that the forty-seventh amendment enunciated a principle inconsistent with the provisions of the twentieth amend-

ment. It did not establish a principle which either negatived or prohibited the continuance in effect of the provisions of the earlier amendment.

The only remaining question, therefore, is whether it was the intention of the legislature in proposing the forty-seventh amendment or of the people in adopting it that immediately upon its adoption it should supersede the twentieth amendment. There are three steps necessary to the adoption of any constitutional amendment. First, it must be proposed by the house of representatives and continued to the next session; second, at that session, it must be submitted by joint action of both houses; and third, it must be voted by the people. Conn. Const. Art. 11. To determine the intention of the General Assembly with reference to the forty-seventh amendment, recourse may be had to the principle that a subsequent legislative act may throw light upon the legislative intent of a former related act. *Hartford* v. *Suffield,* 137 Conn. 341, 346, 77 A. 2d 760; *General Realty Improvement Co.* v. *New Haven,* 133 Conn. 238, 242, 50 A. 2d 59. At the 1951 session of the General Assembly the house of representatives by substitute for house resolution No. 14 proposed as an amendment to the constitution a revision thereof incorporating all the amendments still in effect down to and including the forty-seventh. It is significant that there was included a section perpetuating the provision of the twentieth amendment relating to the terms of city and police court judges, with the added provision: "This section shall cease to be effective as a part of this constitution upon the execution by the general assembly of section 6 of this article [the forty-seventh amendment] by prescribing the term and manner of appointment of judges of minor courts, including town, city, borough and police courts." Conn. H. Jour., 1951 Sess., p. 774. The adoption of the resolution in this form is

indicative that, when the house of representatives, in 1945, proposed what is now the forty-seventh amendment, it was the intention that the provisions of the twentieth amendment would continue to control until the provisions of the forty-seventh were implemented by legislation. It, of course, falls short of proof that such was the intention. On the other hand, it tends strongly to negative any claim that the 1945 house of representatives had a contrary intention.

It is also of significance that both houses of the General Assembly, in enacting the 1949 revision of the General Statutes after the forty-seventh amendment had been adopted, re-enacted (General Statutes, Sup. 1949, § 700a) the statute which provided that the terms of municipal court judges should be for two years from July 1 in the year in which they are appointed. General Statutes § 76. That also tends to indicate that it was not the intention of the General Assembly when it submitted the forty-seventh amendment that the amendment should abrogate immediately the provision for a two-year term.

As regards the intention of the people in adopting the forty-seventh amendment: If it were so that the adoption of the forty-seventh amendment operated as an immediate repeal of the twentieth, it would also operate to repeal that section of the statutes which is now § 76 of the General Statutes and which provides that the term of a municipal court judge shall run for two years from July first in the year of his appointment. *United States* v. *Chambers,* 291 U. S. 217, 222, 54 S. Ct. 434, 78 L. Ed. 763. The consequence would be that, between the time the amendment was adopted and the time the General Assembly prescribed the term of office, there would be no provision of law fixing the term of office of municipal court judges. Such a situation would be most unusual. A public office for which no

term is fixed by law is almost an anomaly. Certainly in this state, at least since the adoption of the constitution in 1818, the terms of office of all judges have been definitely prescribed and limited by law. Indeed, with the exception of the office of justice of the peace since 1850, the terms of office of all judges have been fixed by the constitution itself and amendments thereof. Conn. Const. Art. 5 § 3; Amend. X, XII, XX, XXI; General Statutes §§ 76, 7545. In the face of all this, it is hardly conceivable that the people could have intended that, until such time as the legislature implemented the forty-seventh amendment, the office of judge of a municipal court should be left without any fixed term specified by law.

Moreover, if the defendants' contention in this case were correct, it would follow that, if the General Assembly permanently failed to act to fix a term, each present incumbent would continue to hold office until he reached the age of seventy years. The whole policy of the state has been not only to specify fixed terms for judges but to make those terms, at least for the minor courts, relatively short. An amendment to the constitution which would at once remove the two-year limitation on those terms and permit the legislature by inaction to extend the terms of the present incumbents indefinitely would be so at variance with that policy that it is difficult to conceive that the people intended the forty-seventh amendment to operate that way. So far, therefore, from there being any evidence that the people intended that the provisions of the twentieth amendment should be abrogated immediately upon the adoption of the forty-seventh, there is every reason to believe that they intended that the provision of the twentieth amendment limiting the term of office would remain in effect until such time as the General Assembly should prescribe a new term of office.

We conclude that there is nothing in the forty-seventh amendment or in the circumstances attendant upon its adoption which overcomes the general rule of construction that a constitutional amendment which requires implementation by legislation does not operate to supersede a prior constitutional provision until the legislature acts. The proper construction of the forty-seventh amendment is that it leaves in effect the provision of the twentieth amendment which fixes the term of office of city court judges at two years. That provision will remain in effect until the General Assembly, acting pursuant to the forty-seventh amendment, prescribes a term for that office. It is stipulated that the General Assembly has not yet taken such action. Accordingly, the limitation of two years upon the term of city court judges embodied in the twentieth amendment still obtains and, in particular, was controlling at the time the defendants were appointed to their offices as of July 1, 1949.

Whether there were vacancies in the offices of judge of the City Court of Bridgeport on July 1, 1951, depends upon the answer to the question, What was the term of the office to which each of the defendants was appointed as of July 1, 1949? *State ex rel. Rundbaken* v. *Watrous*, 135 Conn. 638, 650, 68 A. 2d 289; *State ex rel. Hendrick* v. *Keating*, 120 Conn. 427, 439, 181 A. 340. They were appointed to fill vacancies in the office pursuant to the provisions of § 92 of the General Statutes. That section states: "When the general assembly shall not be in session and when no other provision shall have been made for filling any vacancy in an office originally filled by the general assembly or either branch thereof, or by the governor with the advice and consent of the general assembly or either branch thereof, the governor may fill the same until the sixth Wednesday of the next session of the general assembly, and until a

successor shall be elected or appointed and shall have qualified. He may fill any vacancy in any office to which he has power of appointment." The claim of the defendants is that this statute extended the term of the offices to which they were appointed beyond two years and until their successors were elected or appointed and qualified. They say that, inasmuch as no successors have been properly elected or appointed, the term of office for which they were appointed is still continuing and therefore there is no vacancy in the office at the present time.

This line of reasoning ignores the fact that the term of the office, a vacancy in which they were appointed to fill, was, at the time of their appointment, and still is, fixed by the twentieth amendment of the constitution, as has already been pointed out. A statutory provision may not override a constitutional one. The constitution limits the term of any city court judgeship to two years. In so far as § 92 purports to extend the term of such office beyond two years, it is ineffective.

This exact question was before us in *State ex rel. Eberle* v. *Clark*, 87 Conn. 537, 89 A. 172. Clark had been appointed by the General Assembly to fill the office of judge of the Hartford Police Court for a two-year term pursuant to a charter provision that such appointment would continue until his successor was duly appointed and qualified. In deciding that Clark could not hold over beyond the term of two years, we said (p. 541): "Article Twenty of the Amendments declares expressly that city and police court judges shall be appointed for two years. The people of the State thus kept from the General Assembly the power to fix and change the terms of these judges. Any attempt on the part of the latter to fix or extend the term is in excess of their constitutional powers." And again, at page 542: "Article Twenty of the Amendments to the

Constitution provides that the appointments of judges of city and police courts shall be for a definite time, when it says that they shall be appointed for the term of two years. No appointment could be more indefinite than one which is to continue until the appointee's successor shall be appointed and qualified." We concluded (p. 545) that, while Clark might hold over de facto after the expiration of his two-year term, he would not then be de jure and there would be a vacancy in the office to be filled by proper appointment. The defendants argue that the *Eberle* case holds that the limitation of term of office contained in the twentieth amendment does not control legislation relating to appointments to fill vacancies. In this they are in error. It is true that, in discussing the validity of Eberle's appointment, which was to fill a vacancy and was made by the governor, we held (p. 546) that article fifth, § 3, of the constitution, providing that judges should be appointed by the General Assembly, did not apply to prevent vacancy appointments by the governor under a statute which was the predecessor of § 92. There is nothing in that which is inconsistent with the court's conclusion that the twentieth amendment did apply to render nugatory that portion of the charter provision which, similarly with § 92, attempted to extend the term of a vacancy appointment beyond the regular two-year term of office. In brief, the holding of the case is that a statutory provision authorizing the governor to appoint to fill a vacancy in the office of judge does not contravene article fifth, § 3, of the constitution, but that a statute which purports to extend the term of that office beyond two years is violative of the twentieth amendment. When the term of an office is fixed by law, an appointment to fill a vacancy is one to fill a vacancy in the term of office as distinguished from a vacancy in the office. *State ex rel. Rundbaken*

v. *Watrous,* 135 Conn. 638, 645, 68 A. 2d 289; *Cummings*
v. *Looney,* 89 Conn. 557, 561, 95 A. 19; *State ex rel.
Rylands* v. *Pinkerman,* 63 Conn. 176, 190, 28 A. 110;
*State ex rel. Rosenthal* v. *Smiley,* 304 Mo. 549, 558, 263
S. W. 825; *Marvel* v. *Camden County,* 135 N. J. L. 575,
577, 53 A. 2d 371; 67 C. J. S. 216. If, as is held in the
*Eberle* case, a statute which purports to extend the term
of an office established by the constitution is violative
of the constitution, it follows that a statute which pur-
ports to extend that same term in connection with a
provision for a vacancy appointment to the term is like-
wise unconstitutional.

One of the cases decided in connection with *State
ex rel. Rundbaken* v. *Watrous,* supra, was *State ex rel.
Monchun* v. *Smith.* Smith had been appointed in 1948,
pursuant to § 92, to fill a vacancy in the office of judge
of the Windsor Town Court caused by the resignation
of the original appointee. Although the appointment
of Smith was "until the sixth Wednesday of the next
session of the General Assembly and until his suc-
cessor shall be appointed and shall be qualified," we
held that his right to the office expired at the end of
the regular two-year term the vacancy in which he had
been appointed to fill. We said at page 645: "One
appointed to fill a vacancy holds office only until the
expiration of the term established for the person whose
place he takes [citing cases]. The limitation of the
term under the appointment in question to the sixth
Wednesday of the next session of the General Assembly
was obviously for the purpose of enabling it to proceed
to fill such a vacancy for the remaining portion of the
term, and the provision that the governor's appointee
should serve until a successor was appointed and had
qualified was to meet the possibility that the General
Assembly would not take such action on or before the
sixth Wednesday of its session. . . . The judge ap-

pointed in 1948 to fill the vacancy could hold office of right only until the General Assembly made an appointment at its 1949 session or, if it failed to act, as was the case, until the expiration, on June 30, 1949, of the term of the judge whose place he took. If, as is claimed in his behalf, his appointment continued as of right until the General Assembly appointed a successor, his term might well exceed the constitutional limitation of two years in effect when he took office." The defendants attempt to distinguish the *Monchun* case from the present on the ground that, in the former, Smith had been appointed to fill a vacancy which resulted from the resignation of the original appointee in the midst of the term, whereas in the present case there were no prior incumbents for the term in question and the vacancy existed ab initio. This difference in the two cases offers no logical basis for a distinction. The basis of the decision in the *Monchun* case was that the twentieth amendment precluded an appointment which would carry past the expiration of the two-year term which ran from July 1, 1947, to June 30, 1949. In the process of arriving at that conclusion it could make no difference whether the vacancy appointee started his term of service at the beginning of the term of the office or in the middle of it.

Both the *Eberle* case and the *Monchun* case, therefore, determine our law to be that the twentieth amendment controls the provisions of § 92 to such an extent that the term of office of an appointee to fill a vacancy in a municipal court judgeship expires when the regular term in which the vacancy occurred expires. For the same reason, § 260 of the General Statutes cannot operate to extend the term of office of the vacancy appointee to a municipal court judgeship. That section provides: "Unless otherwise specifically provided by law, each person appointed or nominated for appointment by the

governor . . . shall be sworn and shall hold office for the term prescribed by law and until his successor shall be appointed and shall have qualified." For various reasons, which it is unnecessary to go into here, there is a substantial doubt that § 260 is intended to apply to offices in the judicial branch of the government. That aside, it is obvious that the term of office of a municipal court judge is "otherwise specifically provided by law." *State ex rel. Rundbaken* v. *Watrous,* 135 Conn. 638, 648, 68 A. 2d 289. The twentieth amendment provides that the term of such a judge shall be two years and no more. Section 260 has no application to the present case. For that reason *State ex rel. Barnes* v. *Holbrook,* 136 Conn. 312, 70 A. 2d 556, and *State ex rel. Ryan* v. *Bailey,* 133 Conn. 40, 48 A. 2d 229, decided under § 260, and *State ex rel. McCarthy* v. *Watson,* 132 Conn. 518, 45 A. 2d 716, decided under a statute similar in effect, are not relevant to the situation presented in the case now before us.

To summarize briefly: The term of office, a vacancy in which the defendants were appointed to fill, was for two years from July 1, 1949. The twentieth amendment to the constitution was in effect at the time of their appointment. It will remain in effect until the forty-seventh amendment receives the requisite implementation by act of the General Assembly. The twentieth amendment imposes a constitutional restraint upon any extension of the term of office of a municipal court judge beyond the period of two years. No legislative or executive act could override that restraint. Accordingly, the defendants' terms of office expired on June 30, 1951. Upon that date they ceased to hold their offices de jure. On July 1, 1951, therefore, there were vacancies in the terms of the offices which it was incumbent upon the governor to fill pursuant to § 92.

He has filled those vacancies by the appointment of the plaintiffs.

In the argument of this case counsel on both sides, by innuendo at least, criticized the General Assembly for its failure to implement the forty-seventh amendment by adopting legislation fixing the terms of office of municipal court judges. The determination of what legislation to that end is to be adopted and when it is to be enacted is the responsibility solely of the legislative branch of the government. It is something which is entirely outside the province of the judicial branch. It is of some interest, however, to note the result which will ensue from the conclusions reached in this opinion. That result is that until the General Assembly implements the forty-seventh amendment the governor will, at the expiration of each two-year period, appoint the judges of the municipal courts. The main purpose of the forty-seventh amendment is to place on the governor the preliminary responsibility of determining who should be appointed to those offices. The effect of this decision is that, for the time being, the governor will have not only the preliminary but also the final responsibility in that regard. To that extent the purposes of the forty-seventh amendment will be accomplished.

It is contended by the plaintiffs that the offices of state senator and of judge of a municipal court are incompatible and that, therefore, the defendant Leipner, who occupies both offices, is disqualified from holding his judicial position. The conclusions already reached make it unnecessary to pass upon this contention.

The Superior Court is advised that on July 1, 1951, neither Benjamin Leipner nor Albert L. Coles was a de jure judge of the City Court of Bridgeport and that on that day both D. Harold Cotter and Otto H. LaMacchia were entitled to hold that office.

No costs will be taxed in this court to any party.
In this opinion the other judges concurred.