STATE OF CONNECTICUT *v.* EFRAIN SANABRIA ET AL.

STATE OF CONNECTICUT *v.* JOSE ALBERTO CASUL
(12344)
(12114)
(12345)
(12346)

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and MENT, Js.

672

Argued November 8, 1983—decision released April 10, 1984

In the first matter:

*Jon L. Schoenhorn,* special public defender, for the defendants Sanabria and Holder.

*Michael J. Whelton,* special public defender, for the defendant Rivera.

*Gerard Smyth,* assistant public defender, for the defendant Richardson.

*Douglas S. Ebenstein,* for the defendant Worthington.

*Gerald M. Klein,* special public defender, for the defendant Ramos.

*Carl Eisenman,* assistant public defender, for the defendant Williams.

*William A. Roberto,* for the defendant Madison.

*Carl Schuman,* assistant state's attorney, with whom, on the brief, was *John M. Bailey,* state's attorney, for the state.

In the second matter:

*Richard Emanuel,* special public defender, with whom, on the brief, was *Suzanne Zitser,* assistant public defender, for the defendant.

*Carl Schuman,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Arthur C. Hadden,* assistant state's attorney, for the state.

SPEZIALE, C. J. These cases were heard together because they present common questions. Each requires a determination of the effective date of amendment seventeen to the Connecticut constitution, which provides that all persons held to answer for a crime punishable by death or life imprisonment be accorded a probable cause hearing "in accordance with procedures prescribed by law." We now hold that although amendment seventeen became a part of the constitution on November 24, 1982, it did not take effect until May 26, 1983, the effective date of legislation (Public Acts 1983, No. 83–210) prescribing the necessary procedures. All defendants, therefore, charged with such crimes who had not been indicted by grand jury as of May 26, 1983, are entitled to a hearing in probable cause. Those who were indicted before May 26, 1983, have no right to any further pretrial determination of probable cause.

When our constitution originally was adopted in 1818 it required that prosecutions for certain offenses be commenced by grand jury indictment: "And no person shall be holden to answer for any crime, the punishment of which may be death or imprisonment for life, unless on a presentment or an indictment of a grand jury; except in the land or naval forces, or in the militia, when in actual service, in time of war, or public danger." Conn. Const., art. I § 9 (1818). From 1818 until 1982 that provision remained substantially unchanged.[1] All persons charged with a crime punishable on conviction by death or life imprisonment had a constitutional right to a grand jury determination that there was probable cause to believe the charge before being required to stand trial. See *State* v. *Stepney,* 181 Conn. 268, 435 A.2d 701 (1980), cert. denied, 449 U.S. 1077, 101 S. Ct. 856, 66 L. Ed. 2d 799 (1981); *State* v. *Menillo,* 159 Conn. 264, 268 A.2d 667 (1970); *State* v. *Stallings,* 154 Conn. 272, 224 A.2d 718 (1966); *Kennedy* v. *Walker,* 135 Conn. 262, 63 A.2d 589 (1948), aff'd, 337 U.S. 901, 69 S. Ct. 1046, 93 L. Ed. 1715, reh. denied, 337 U.S. 934, 69 S. Ct. 1493, 93 L. Ed. 1740 (1949); *State* v. *Kemp,* 126 Conn. 60, 9 A.2d 63 (1939).

Throughout this period there also existed a statutory right to a grand jury indictment as a precondition to

[1] In the constitution of 1965 the grand jury provision was moved to article first, § 8 and its language modernized. From 1965 until 1982 article first, § 8 provided: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel; to be informed of the nature and cause of the accusation; to be confronted by the witnesses against him; to have compulsory process to obtain witnesses in his behalf; to be released on bail upon sufficient security, except in capital offenses, where the proof is evident or the presumption great; and in all prosecutions by indictment or information, to a speedy, public trial by an impartial jury. No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law, nor shall excessive bail be required nor excessive fines imposed. No person shall be held to answer for any crime, punishable by death or life imprisonment, unless on a presentment or an indictment of a grand jury, except in the armed forces, or in the militia when in actual service in time of war or public danger."

trial for such offenses. The most recent enactment appeared in General Statutes § 54-45[2] and provided in relevant part that "[n]o person shall be put to plea or held to trial for any crime the punishment of which may be death or imprisonment for life unless an indictment has been found against him for such crime by a grand jury legally impaneled and sworn. . . ." General Statutes § 54-45 (b). Subsection (a) of that statute set out, inter alia, procedures by which grand juries should be summoned, impaneled and sworn, and how they should conduct themselves.

In 1981 the General Assembly adopted Substitute House Joint Resolution No. 36.[3] Public and Special

---

[2] Before being amended by Public Acts 1983, No. 83-210, on May 26, 1983, General Statutes § 54-45 stated: "(a) The superior court may, when necessary, order a grand jury of eighteen electors of the judicial district where said court is sitting to be summoned, impaneled and sworn to inquire after and present such offenses as are cognizable by said court. Said court may, in its discretion, order one or two additional electors to be added to the grand jury as alternate grand jurors. Such alternate jurors shall be sworn separately from those constituting the regular panel and shall not counsel or confer with members of the regular panel as to any matters before the grand jury unless they become a part of the regular panel as hereinafter provided. They shall attend the sessions of the grand jury and shall be seated with or near the members of the regular panel, with equal opportunity to see and hear all matters adduced in the proceedings. If for any reason a grand juror is unable to further perform his duty, the court may excuse him and, if any grand juror is so excused or dies, the court may order that the alternate juror or, if more than one, that one who is designated by lot drawn by the clerk of the superior court shall become a part of the regular panel and the inquiry shall then proceed as though such grand juror had been a member of the regular panel from the beginning of the inquiry.

"(b) No person shall be put to plea or held to trial for any crime the punishment of which may be death or imprisonment for life unless an indictment has been found against him for such crime by a grand jury legally impaneled and sworn, and no bill shall be presented by any grand jury unless at least twelve of the jurors agree to it."

[3] "Substitute House Joint Resolution No. 36

"RESOLUTION PROPOSING AN AMENDMENT TO THE CONSTITUTION CONCERNING THE REQUIREMENT OF A GRAND JURY IN CAPITAL OFFENSES.

"Resolved by this Assembly:

"That the following be proposed as an amendment to the constitution

Acts, 1981, vol. 1, part 1. That resolution proposed that article first, § 8 of the constitution, which then incorporated the grand jury right among its other provisions,[4] be amended. The proposal called for the elimination of the grand jury and substituted a requirement for a probable cause hearing in all cases where a sentence of death or life imprisonment might be imposed. Substitute House Joint Resolution No. 36 (1981). On November 2, 1982, the proposed amendment was duly presented to the electorate for its approval at the general election. On November 24, 1982, the secretary of the state certified that a majority of the voters had approved the amendment, which was designated

of the state, which, when approved and adopted in the manner provided by the constitution, shall, to all intents and purposes, become a part thereof:

"Section 8 of article first of the constitution is amended to read as follows:

"In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel; to be informed of the nature and cause of the accusation; to be confronted by the witnesses against him; to have compulsory process to obtain witnesses in his behalf; to be released on bail upon sufficient security, except in capital offenses, where the proof is evident or the presumption great; and in all prosecutions by information, to a speedy, public trial by an impartial jury. No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law, nor shall excessive bail be required nor excessive fines imposed. No person shall be held to answer for any crime, punishable by death or life imprisonment, unless upon probable cause shown at a hearing in accordance with procedures prescribed by law, except in the armed forces, or in the militia when in actual service in time of war or public danger.

"RESOLVED: That the foregoing proposed amendment to the constitution be continued to the next session of the general assembly elected at the general election to be held on November 2, 1982, and published with the laws passed at the present session, or be presented to the electors at the general election to be held on November 2, 1982, whichever the case may be, according to article sixth of the amendments to the constitution. The designation of said proposed amendment to be used on the voting machine ballot labels and absentee ballots at such election shall be 'For the constitutional amendment concerning the requirement of a grand jury for capital offenses.' "

[4] See footnote 1, supra.

amendment seventeen to the constitution[5] (hereinafter the amendment). The amendment provides in relevant part that: "Section 8 of article first of the constitution is amended to read as follows: . . . No person shall be held to answer for any crime, punishable by death or life imprisonment, unless upon probable cause shown at a hearing *in accordance with procedures prescribed by law,* except in the armed forces, or in the militia when in actual service in time of war or public danger." (Emphasis added.) Conn. Const., amend. XVII.

As of November 24, 1982, the date the amendment was certified by the secretary of the state, neither the General Statutes nor the rules of the Superior Court prescribed procedures for such probable cause hearings. Also, the legislature had not yet repealed or amended the statutory grand jury provision, § 54-45 of the General Statutes. It was not until May 26, 1983, that Public Acts 1983, No. 83-210, became effective.[6] That act

---

[5] Amendment seventeen to the constitution provides: "Section 8 of article first of the constitution is amended to read as follows:

In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel; to be informed of the nature and cause of the accusation; to be confronted by the witnesses against him; to have compulsory process to obtain witnesses in his behalf; to be released on bail upon sufficient security, except in capital offenses, where the proof is evident or the presumption great; and in all prosecutions by information, to a speedy, public trial by an impartial jury. No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law, nor shall excessive bail be required nor excessive fines imposed. No person shall be held to answer for any crime, punishable by death or life imprisonment, unless upon probable cause shown at a hearing in accordance with procedures prescribed by law, except in the armed forces, or in the militia when in actual service in time of war or public danger."

[6] "PUBLIC ACT NO. 83-210

"AN ACT CONCERNING A HEARING IN PROBABLE CAUSE FOR PERSONS ACCUSED OF CRIMES PUNISHABLE BY DEATH OR LIFE IMPRISONMENT.

"Section 1. (New) (a) No person charged by the state on or after the effective date of this act shall be put to plea or held to trial for any crime punishable by death or life imprisonment unless the court at a preliminary hearing

repealed the grand jury provisions embodied in § 54-45 and prescribed procedures by which probable cause hearings would be conducted. The legislature, however, did not make the act's provisions concerning probable cause hearings retroactive to the date the amendment was certified, November 24, 1982. Instead, the act pro-

determines there is probable cause to believe that the offense charged has been committed and that the accused person has committed it. The accused person may knowingly and voluntarily waive such preliminary hearing to determine probable cause.

"(b) Unless waived by the accused person or extended by the court for good cause shown, such preliminary hearing shall be conducted within sixty days of the filing of the complaint or information in superior court. The court shall be confined to the rules of evidence, except that written reports of expert witnesses shall be admissible in evidence and matters involving chain of custody shall be exempt from such rules. No motion to suppress or for discovery shall be allowed in connection with such hearing. The accused person shall have the right to counsel and may attend and, either individually or by counsel, participate in such hearing, present argument to the court, cross-examine witnesses against him and obtain a transcript of the proceedings at his own expense. At the close of the prosecution's case, if the court finds that, based on the evidence presented by the prosecution, probable cause exists, the accused person may make a specific offer of proof, including the names of witnesses who would testify or produce the evidence offered. The court shall not allow the accused person to present such evidence unless the court determines that such evidence would be sufficient to rebut the finding of probable cause.

"(c) If, from the evidence presented pursuant to subsection (b) of this section, it appears to the court that there is probable cause to believe that the accused person has committed the offense charged, the court shall so find and approve the continuance of the accused person's prosecution for that offense. A determination by the court that there is not probable cause to require the accused person to be put to trial for the offense charged shall not operate to prevent a subsequent prosecution of such accused person for the same offense.

"Sec. 2. Section 53a-45 of the general statutes is repealed and the following is substituted in lieu thereof:

"(a) Murder is punishable as a class A felony in accordance with subdivision (2) of section 53a-35a unless it is a capital felony.

"(b) If a person indicted for murder or held to answer for murder after a hearing conducted in accordance with the provisions of section 1 of this act waives his right to a jury trial and elects to be tried by a court, the court shall be composed of three judges designated by the chief court administrator or his designee, who shall name one such judge to preside over the

vides, in relevant part, that "[n]o person charged by the state on or after the effective date [May 26, 1983] of this act shall be put to plea or held to trial for any crime punishable by death or life imprisonment unless

trial. Such judges, or a majority of them, shall determine the question of guilt or innocence and shall, as provided in said section 53a-46a, render judgment and impose sentence.

"(c) The court or jury before which any person indicted for murder or held to answer for murder after a hearing conducted in accordance with the provisions of section 1 of this act is tried may find him guilty of homicide in a lesser degree than that charged.

"Sec. 3. Section 54-45 of the general statutes is repealed and the following is substituted in lieu thereof:

"(a) The superior court may, when necessary, order a grand jury of eighteen electors of the judicial district where said court is sitting to be summoned, impaneled and sworn to inquire after and present such offenses as are cognizable by said court. Said court may, in its discretion, order one or two additional electors to be added to the grand jury as alternate grand jurors. Such alternate jurors shall be sworn separately from those constituting the regular panel and shall not counsel or confer with members of the regular panel as to any matters before the grand jury unless they become a part of the regular panel as hereinafter provided. They shall attend the sessions of the grand jury and shall be seated with or near the members of the regular panel, with equal opportunity to see and hear all matters adduced in the proceedings. If for any reason a grand juror is unable to further perform his duty, the court may excuse him and, if any grand juror is so excused or dies, the court may order that the alternate juror or, if more than one, that one who is designated by lot drawn by the clerk of the superior court shall become a part of the regular panel and the inquiry shall then proceed as though such grand juror had been a member of the regular panel from the beginning of the inquiry.

"(b) No person shall be put to plea or held to trial for any crime the punishment of which may be death or imprisonment for life, charged by the state before the effective date of this act, unless an indictment has been found against him for such crime by a grand jury legally impaneled and sworn, and no bail shall be presented by any grand jury unless at least twelve of the jurors agree to it.

"Sec. 4. Section 54-46 of the general statutes is repealed and the following is substituted in lieu thereof:

"For all crimes charged by the state on or after the effective date of this act, the prosecution may be by complaint or information. For all crimes punishable by death or imprisonment for life charged by the state before the effective date of this act, the prosecution shall be by indictment.

"Sec. 5. This act shall take effect from its passage.

"Approved May 26, 1983."

the court at a preliminary hearing determines there is probable cause to believe that the accused person has committed it." Public Acts 1983, No. 83-210, § 1 (a). The act then states that any person charged with such a crime before the effective date of the act must be indicted by a grand jury before being put to trial. Id., § 3 (b).

These cases present questions concerning the period of time between certification of the amendment, November 24, 1982, and the effective date of the act, May 26, 1983. Unquestionably, any defendant indicted by a grand jury before the amendment was certified (November 24, 1982) is not entitled to any further pretrial determination of probable cause. And, any defendant charged by information for any crime punishable by death or life imprisonment on or after the effective date of Public Act 83-210 (May 26, 1983) is entitled to a hearing in probable cause. In order to determine the constitutional rights of those so charged before May 26, 1983, but not indicted before November 24, 1982, we are now asked to decide: (1) whether the constitutional right to a probable cause hearing became effective immediately upon certification, and (2) whether the legislature acted within its constitutional authority in enacting Public Act 83-210 which authorizes probable cause hearings only for those charged by the state on or after May 26, 1983.

The first matter before us involves eight separate cases: *State* v. *Sanabria, State* v. *Holder, State* v. *Rivera, State* v. *Richardson, State* v. *Worthington, State* v. *Ramos, State* v. *Williams,* and *State* v. *Madison.* All eight defendants were charged by information before May 26, 1983, with crimes punishable by death or life imprisonment; all of them were indicted by grand juries after November 24, 1982, on the charges alleged in the informations. The indictments against Sanabria, Holder, Rivera, and Richardson were handed down

before May 26, 1983. The indictments against Worthington, Ramos, Williams, and Madison, however, were handed down after May 26, 1983. Each defendant filed a motion for an order granting a probable cause hearing. In each instance the trial court denied the motion without prejudice. On September 16, 1983, the trial court, *Brennan, J.*, combined these cases and reserved to this court questions concerning the defendants' asserted right to a hearing in probable cause.

The second matter involves a single defendant, Jose Casul, who, on February 22, 1983, was charged by information with murder. On March 21, 1983, Casul filed a motion to dismiss the grand jury, which had been summoned by the trial court. The trial court denied the motion and on March 23, 1983, the grand jury returned a true bill of indictment on the charge. Casul then filed an appeal (docket No. 12114) from the trial court's denial of his motion to dismiss the grand jury. On August 15, 1983, Casul filed a motion for a probable cause hearing. The trial court denied the motion without prejudice and, with the consent of the parties, reserved to this court questions concerning the defendant's asserted right to a hearing in probable cause. The reservation, with stipulated facts, was filed on September 26, 1983. Because the reserved questions address the same issues that Casul raised on appeal, we dismiss the appeal as moot.[7]

I

JURISDICTION

Before we address the reserved questions we must first decide whether it is within our jurisdiction to hear

[7] The substantive issues presented in Casul's appeal are identical to those raised in both his and Sanabria's reservations: (1) whether the amendment was self-executing, and (2) whether the General Assembly could confer the right to probable cause hearings only on those charged on or after the effective date of Public Acts 1983, No. 83-210. Because those issues are fully addressed in our response to the reserved questions, the appeal is dismissed as moot.

these questions at this stage of the proceedings. Section 52-263 of the General Statutes provides, in relevant part, that a party who "is aggrieved by the decision of the court or judge upon any question or questions of law arising in the trial . . . may appeal to the court having jurisdiction from the *final judgment*." (Emphasis added.) Thus, matters usually are brought to this court only after the trial court renders final judgment. "The appealable final judgment in a criminal case is ordinarily the imposition of sentence." *State* v. *Seravalli,* 189 Conn. 201, 205, 455 A.2d 852 (1983); *State* v. *Grotton,* 180 Conn. 290, 293, 429 A.2d 871 (1980), quoted in *State* v. *Curcio,* 191 Conn. 27, 31, 463 A.2d 566 (1983).

General Statutes § 52-235, however, provides for reservation of questions of law as another way of reaching an appellate court: "The superior court, or any judge of the court, with the consent of all parties of record, may reserve questions of law for the advice of the supreme court or appellate court in all cases in which an appeal could lawfully have been taken to said court had judgment been rendered therein." General Statutes § 52-235 (a), as amended by Public Acts, Spec. Sess., June, 1983, No. 29; see also Practice Book § 3133. All of the defendants filed motions before their respective trial courts challenging the state's authority to bring them to trial on charges punishable by death or life imprisonment without first conducting hearings in probable cause. In order to resolve that issue the courts, with the consent of the state and the defendants, then invoked § 52-235 and asked this court for advice on the reserved questions.

We are thus presented with the jurisdictional question of whether we may decide reserved questions in cases where the answer to the question propounded will not necessarily be decisive of the final judgment.

We interpret § 52-235 as not requiring that the case be at the final judgment stage when the reservation is brought. Rather, § 52-235 allows the trial court, with the parties' consent, to reserve any question of law to this court provided the case is one that, once final judgment has been rendered, might legally be brought here. For example, a reservation could not be brought from a small claims action because the final judgment in a small claims action may not be appealed to either the Appellate Court or the Supreme Court. General Statutes § 52-263. In cases where final adjudication would activate an aggrieved party's right to appeal, however, the trial court may reserve questions of law to the appropriate appellate court[8] at any stage of the proceedings, with the parties' consent, subject always to the court's discretionary authority to decline to exercise jurisdiction. Practice Book § 3133; see, e.g., *Doe* v. *Herrington,* 191 Conn. 496, 466 A.2d 1 (1983).

This interpretation of § 52-235 is well founded. In *Hart* v. *Roberts,* 80 Conn. 71, 66 A. 1026 (1907), the court responded to the question whether the predecessor to § 52-235, General Statutes (1902 Rev.) § 751,[9] which is identical in relevant part, granted jurisdiction to hear reserved questions in a case that had not reached the final judgment stage. The majority ulti-

---

[8] Practice Book § 3133 provides, in relevant part: "A reservation shall be taken to the supreme court from those cases in which an appeal could have been taken directly to the supreme court had judgment been rendered. Reservations in cases where the proper court for the appeal cannot be determined prior to judgment shall also be taken directly to the supreme court."

[9] General Statutes (1902 Rev.) § 751 provided: "Reservation of questions of law. Questions of law may be reserved for the advice of the supreme court of errors in all cases in which an appeal could lawfully have been taken to said court had judgment been rendered therein; but no such questions shall be reserved without the consent of all parties to the record. The court or judge making such reservation shall, in the judgment, decree, or decision made or rendered in such cases, conform to the advice of the supreme court of errors."

mately held that the court should not exercise jurisdiction over the reservation. But its decision was based on discretionary prudential concerns, not on an absence of legislatively authorized jurisdiction. "The language of the statute (§ 751) is doubtless comprehensive enough to permit this court to entertain reservations of questions of law where the advice given will not be decisive of the final judgment to be rendered in the cause. Doubtless, also, such reservations have been entertained and possibly not infrequently." *Hart* v. *Roberts,* supra, 74. Furthermore, in explaining its decision not to exercise jurisdiction in that case, the majority cautioned: "We do not . . . wish to be understood as saying that no reservation ought to be made or entertained until the case is ready for final judgment. Situations have arisen and may well arise where such action would be in the interest of simplicity, directness and economy in judicial action." Id., 75.[10]

Later cases brought on reservation demonstrate this court's adherence to the interpretation placed on the jurisdictional statute in *Hart* v. *Roberts.* In *Barr* v. *First Taxing District,* 147 Conn. 221, 158 A.2d 740 (1960), the court was presented with a reservation under § 52-235 that was brought before the pleadings were completed. The questions presented were among those that the parties thought likely to arise during trial. Id., 223. The court declined to hear the reservation but, as in *Hart* v. *Roberts,* supra, made it clear that it was exercising its discretionary powers based on prudential concerns. *Barr* v. *First Taxing District,* supra, 225. In so doing the court quoted that portion

---

[10] Chief Justice Simeon Baldwin dissented from the court's decision to decline the jurisdiction it found in the statute. *Hart* v. *Roberts,* 80 Conn. 71, 77–82, 66 A. 1026 (1907) (*Baldwin, C. J.,* dissenting). The Chief Justice agreed that § 751 of the General Statutes conferred Supreme Court jurisdiction regardless of the underlying judgment's finality, but criticized the majority for limiting that jurisdiction to cases ready for final judgment and cases presenting exceptional circumstances.

of *Hart* v. *Roberts* that recognized the court's jurisdiction to hear reserved questions in cases not ready for final judgment. *Barr* v. *First Taxing District,* supra, 224, quoting *Hart* v. *Roberts,* supra, 74.

We emphasize that our decision today should not be construed as authorizing the exercise of Supreme Court jurisdiction over all reservations. The prudential rule set forth in *Hart* v. *Roberts,* supra, survives both as binding precedent and by Practice Book rule. Section 3133 of the Practice Book provides, in relevant part: "The supreme court will not entertain a reservation for its advice upon questions of law arising in an action which is not ready for final judgment, unless the question or questions presented are such as are, in the opinion of the court, reasonably certain to enter into the decision of the case, and it appears that their present determination would be in the interest of simplicity, directness and economy of judicial action." See also Maltbie, Conn. App. Proc. § 231.

We conclude that the reserved questions are within the Supreme Court's jurisdiction. We entertain the reservations because the issues raised are of critical importance to the proceedings and our advice will further the interests of simplicity, directness, and judicial economy.[11] Practice Book § 3133.

## II

### RESERVED QUESTIONS

Two questions are presented for our advice:

A. Is the amendment of November 24, 1982, self-executing in that it confers the right to a probable cause hearing on all persons not yet indicted by a grand jury as of November 24, 1982?

---

[11] In the past we have exercised our jurisdiction pursuant to Practice Book § 3133 over cases presenting significant questions concerning grand jury proceedings. See, e.g., *State* v. *Stepney,* 181 Conn. 268, 435 A.2d 701 (1980), cert. denied, 449 U.S. 1077, 101 S. Ct. 856, 66 L. Ed. 2d 799 (1981).

B. Did the Connecticut General Assembly exceed its constitutional authority under article first, § 8 of the Connecticut constitution, as amended on November 2, 1982, and certified on November 24, 1982, by providing in Public Acts 1983, No. 83-210 that the right to a probable cause hearing would apply only to persons "charged by the state on or after (May 26, 1983) the effective date of (the) act?"[12]

## A

### WHETHER THE AMENDMENT WAS SELF-EXECUTING

### 1

The amendment was not fully self-executing.

Substitute House Joint Resolution No. 36 (1981 Jan. Sess.), by which the General Assembly proposed the amendment to the voters, provided that the amendment, "when approved and adopted in the manner provided by the constitution, shall, to all intents and purposes, become a part thereof."[13] Amendment six to the constitution sets out the method for proposing and approving amendments to the constitution. It provides that a proposed amendment, on approval by three-fourths of the membership of each house in the General Assembly, shall be presented to the electors at the next general election in the next even-numbered year. Amendment six states that then "[i]f it shall appear, in a manner to be provided by law, that a

---

[12] Although the trial court phrased the questions in inverse order, because of our conclusions we are responding in the order set out above.

In the cases of defendants Sanabria et al., the trial court raised a third question:

"If the answer to question # [B] is 'no,' then does the meaning of the phrase 'charged by the state' in Public Act 83-210 include the filing of an information in either the Superior Court for the geographical area or the Superior Court for the judicial district?"

Because we answer "yes" to the second question, we do not respond directly to this question.

[13] See footnote 3, supra.

majority of the electors present and voting on such amendment at such election shall have approved such amendment, the same shall be valid, to all intents and purposes, as a part of this constitution." General Statutes § 9-369 establishes the manner by which the outcome of a constitutional amendment referendum is to be determined. It provides that the result shall be declared by the secretary of the state and that "[i]f, upon the official determination of the result of such vote, it appears that a majority of all the votes so cast are in approval of such amendment . . . such amendment . . . shall, unless otherwise provided, take effect forthwith." General Statutes § 9-369.

Thus, our constitution, when read together with its enabling statute, commands that constitutional amendments become a part of the constitution upon certification. The terms of a given amendment, however, may either explicitly or by necessary implication, delay when it takes effect. The amendment in question mandates a probable cause determination after a hearing "in accordance with procedures prescribed by law."[14] Because no probable cause hearing procedures were prescribed by law at the time of certification by the secretary of the state, the question turns on whether the phrase "prescribed by law" means that the constitutional right to a probable cause hearing would not take effect until such procedures were prescribed. The defendants contend that the amendment did not contemplate such a delay and was therefore fully self-executing. We do not agree that it was fully self-executing.

The resolution of the question depends on whether the amendment requires enabling procedures to give it substance. "Constitutional provisions are not necessarily self-executing. In so far as they either expressly

---

[14] See footnote 5, supra.

or by necessary implication require legislative action to implement them, they are not effective until that legislative action is had." *State ex rel. Cotter* v. *Leipner,* 138 Conn. 153, 158, 83 A.2d 169 (1951); see *Davis* v. *Burke,* 179 U.S. 399, 21 S. Ct. 210, 45 L. Ed. 249 (1900); *Stolberg* v. *Caldwell,* 175 Conn. 586, 603, 402 A.2d 763 (1978), appeal dismissed, 454 U.S. 958, 102 S. Ct. 496, 70 L. Ed. 2d 374 (1981); *Wann* v. *Reorganized School District No. 6,* 293 S.W.2d 408 (Mo. 1956); *Latting* v. *Cordell,* 197 Okla. 369, 172 P.2d 397 (1946). The United States Supreme Court has explained this rule of constitutional construction similarly. "Where a constitutional provision is complete in itself it needs no further legislation to put it in force." *Davis* v. *Burke,* supra, 403. The United States Supreme Court adopted this test: "A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced; and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law." *Davis* v. *Burke,* supra, quoting Cooley, Constitutional Limitations p. 99.

The standards enunciated in *Davis* v. *Burke,* supra, still prevail. A review of more recent decisions in other jurisdictions indicates adherence to the principle that a constitutional amendment does not implicitly require supplementary legislation, and therefore is self-executing, when by its terms the amendment expressed a right or prohibition that is sufficiently detailed to admit of judicial enforcement. See *Convention Center Referendum Committee* v. *Board of Elections,* 399 A.2d 550 (D.C. App. 1979); *Gray* v. *Bryant,* 125 So. 2d 846 (Fla. 1960); *State* v. *Rodrigues,* 63 Hawaii 412, 629 P.2d 1111 (1981); *Wolverine Golf Club* v. *Hare,* 24 Mich. App. 711, 180 N.W.2d 820 (1970), aff'd, 384 Mich. 461, 185

N.W.2d 392 (1971); *State ex rel. Vogel* v. *Garaas,* 261 N.W.2d 914 (N.D. 1978); *Commonwealth* v. *National Gettysburg Battlefield Tower, Inc.,* 454 Pa. 193, 311 A.2d 588 (1973). Where the substance of the amendment cannot be determined with reasonable precision on judicial inquiry, however, it is unenforceable. In such circumstances the amendment does not take effect until implementing legislation is enacted.

Applying that standard to this case we hold that the amendment, which creates a right to a hearing to determine probable cause, standing alone, does not supply "a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced." *Davis* v. *Burke,* supra, 403. It merely indicates a principle without sufficient specificity to allow adjudication of any claimed violation. By its very terms ("in accordance with procedures prescribed by law") the amendment looks to statutes or rules to supplement its general provision. Thus, it is left to some other authority to establish, inter alia, the evidentiary rules for such hearings, the extent to which witnesses may be examined and cross-examined, and procedures for argument to the court. Absent such supplementation, the provision lacks justiciable standards, thereby preventing meaningful review of any controversy arising under it.

The wording of the amendment that the probable cause hearings are to be conducted "in accordance with procedures prescribed by law" is evidence of the need for implementing procedures. But it does not have talismanic significance. Although it clearly authorizes the implementation of procedures, in other circumstances it might not require that the amendment's execution be stayed until such procedures are created. Accord *Badger* v. *Hoidale,* 88 F.2d 208 (8th Cir. 1937); *State ex rel. Clark* v. *Harris,* 74 Or. 573, 144 P. 109 (1914). In some instances the supplemental procedures might

merely be a functional means to administer the substantive constitutional right. In such case the amendment would be fully self-executing under amendment six and § 9-369, provided the other criteria were met. The substantive right that this amendment accords, however, is intimately bound up with its procedural underpinnings. The procedures that attend a probable cause hearing are not mere administrative guidelines; they are the constituent parts of the right itself.

A similar situation existed in *State ex rel. Cotter* v. *Leipner,* supra. There, the amendment in question stated that certain judges were to be appointed by the General Assembly "for such term and in such manner as shall be by law prescribed." Conn. Const., amend. XLVII (1948). An existing, unrepealed amendment provided that such judges were to be appointed to two-year terms. Conn. Const., amend. XX (1876). The question before the court was "whether the adoption of the forty-seventh amendment, in so far as it provides that the terms of office of minor court judges shall be prescribed by law, terminated immediately the effectiveness of so much of the twentieth amendment as provided that the term of office of those judges shall be two years." *State ex rel. Cotter* v. *Leipner,* supra, 161. The court concluded that because the forty-seventh amendment needed legislation to give it substantive effect, it was not self-executing.

Similarly, the Hawaii Supreme Court was recently called upon to decide whether a state constitutional amendment that created an independent counsel to advise grand juries was self-executing. The amendment stated that such counsel was to be appointed "as provided by law." *State* v. *Rodrigues,* supra, 414, quoting Hawaii Const., art. I § 11. At the time the amendment was adopted Hawaii law did not provide for any means by which such special counsel could be appointed. *State* v. *Rodrigues,* supra. The court, employing the test

set out in *Davis* v. *Burke,* supra, held that the amendment was not self-executing, owing in large part to the amendment's reference to procedures "as provided by law." *State* v. *Rodrigues,* supra, 415. The court noted that "[a]t the time the amendment was adopted, there was no other constitutional provision or statute to which the phrase could refer. Absent such provision, subsequent legislation was required to implement the amendment."[15] Id.

Under the principles of constitutional interpretation long held by this and other courts, and our interpretation of the amendment's intent, we hold that that portion of the amendment establishing probable cause hearings did not take effect until the enabling legislation took effect on May 26, 1983.[16] See Public Acts

[15] The defendants argue that the reasoning that informs *State* v. *Rodrigues,* 63 Hawaii 412, 629 P.2d 1111 (1981), is inapplicable here because the Hawaii amendment was not a civil right of the people. Given the grand jury's long history as the citizenry's check upon the prosecution, we find no rational distinction between constitutional provisions designed to aid the grand jury and those that bestow rights on private citizens in their individual capacity.

[16] The defendants argue that if the probable cause hearing required by the amendment would not take effect until implementing procedures were created, the substantive constitutional right might be denied through legislative inaction. Their concern is understandable but the argument fails on two grounds.

First, procedures for probable cause hearings need not necessarily be created by the legislature alone. "There are activities in which both the legislature and the judiciary may engage without violating the prohibitions of the constitution." *State* v. *Clemente,* 166 Conn. 501, 510, 353 A.2d 723 (1974). The judicial branch has inherent authority to make rules of administration, practice, and procedure with regard to its functions. See *State* v. *Clemente,* supra, 507; *State ex rel. Kelman* v. *Schaffer,* 161 Conn. 522, 529, 290 A.2d 327 (1971); *Adams* v. *Rubinow,* 157 Conn. 150, 156, 251 A.2d 49 (1968). If the judges of the Superior Court had adopted Practice Book procedures for probable cause hearings before the enactment of Public Act 83-210, the constitutional grand jury provision would have taken effect at that time. Thus, there is no danger that a single branch of government could abrogate a constitutional provision.

Secondly, if both the General Assembly and the judges of the Superior Court failed to establish procedures, thereby leaving the constitutional pro-

1983, No. 83-210. The defendants' right to such a hearing did not vest, therefore, until May 26, 1983. Accordingly, all the defendants on these combined reservations who had been indicted by a grand jury before May 26, 1983, (Sanabria, Holder, Rivera, Richardson, and Casul) have no valid claim to a probable cause hearing. This is so irrespective of the date they were arrested or charged by information.

2

The amendment was partially self-executing.

The defendants argue that even if the amendment was not fully self-executing, it was partially self-executing to the extent that it superseded the previous version of article first, § 8 and the statutes enacted pursuant to it.[17] They contend that the state was thereby prohibited from bringing any defendant before a grand jury after November 24, 1982, regardless of when the constitutional right to a probable cause hearing took effect. We agree that the amendment, even though the vesting of the right to a probable cause hearing was delayed, eliminated the *constitutional* grand jury provisions expressed in article first, § 8. Amendment six to the Connecticut constitution and General Statutes § 9-369 clearly mandate that result. We do not agree, however, that the state was legally precluded from employing grand jury inquiries. The amendment

vision in limbo for an unreasonable period, this court could have imposed such procedures in order to effectuate the amendment. Because the legislature did act within a reasonable period, it was not necessary for us to do so.

[17] The defendants also argue that the amendment can be construed as partially self-executing to the extent that it requires a court determination of probable cause after some form of hearing. In other words, they suggest that the entire amendment except for the phrase "in accordance with procedures prescribed by law" took effect on certification. As we have explained above, however, because the procedures that attend the right to a probable cause hearing are integral parts of the right itself, the constitutional right to a probable cause hearing could not take effect until those procedures were prescribed.

was partially self-executing only to the extent that it repealed the existing provisions of article first, § 8. The *statutory* provision for grand juries, General Statutes § 54-45, was not repealed by the amendment and it remained in effect until it was repealed on May 26, 1983, by Public Act 83-210. During the period between November 24, 1982, and May 26, 1983, then, § 54-45 provided a valid statutory authorization for the use of grand juries in cases punishable by death or life imprisonment.[18]

In *State* v. *Curcio,* 191 Conn. 27, 28 n.2, 463 A.2d 566 (1983), we recognized that "[t]he grand jury portion of article first, § 8 was repealed by the approval by the voters of article XVII of the amendments to the Connecticut Constitution." That determination was compelled by amendment six to the constitution and General Statutes § 9-369 which provide that a duly authorized amendment becomes a part of the constitution immediately. As we have noted in this opinion, the right given by a constitutional provision may depend for its effectiveness on subsequently prescribed procedures or rules. If so, that right is not immediately effective. The clear import of amendment six and § 9-369, however, is that such an amendment itself is a part, albeit dormant, of our constitution on certification. Undoubtedly then, if such an amendment is a part of the constitution, the former provisions of that same section are eliminated. Thus, after November 24, 1982, the Connecticut constitution did not provide for or require grand jury indictments. Amendment seventeen contained a provision for probable cause hearings in cases punishable by death or life imprisonment, but that provision lay dormant until May 26, 1983, the effective date of Public Act 83-210, which prescribed the procedures to be followed.

---

[18] See footnote 2, supra.

This determination of the amendment's effect is consonant with the principles expressed in *State ex rel. Cotter* v. *Leipner,* supra. "It is generally recognized that a constitutional amendment, even if it is not self-executing, may, immediately upon its adoption, supersede a former provision if it is clear that it was the intention of the people in adopting it that it would do so." Id., 160, citing *Badger* v. *Hoidale,* 88 F.2d 208 (8th Cir. 1937).

The amendment directly repealed the existing provisions of article first, § 8. It does not include any direction that the previous provisions remain in full force and effect until implementing procedures are prescribed. In House Joint Resolution No. 36 the General Assembly agreed that the amendment "when approved and adopted in the manner provided by the constitution, shall, to all intents and purposes, become a part thereof." Substitute House Joint Resolution No. 36 (1981). We conclude, therefore, that the amendment superseded its predecessor upon certification by the secretary of the state on November 24, 1982.

The repeal of the grand jury provision of article first, § 8 of the constitution, however, did not simultaneously nullify the statutory grand jury provisions that complemented the former article. See General Statutes § 54-45.

The legislature's authority to enact a statute providing for grand jury indictment, as § 54-45 did, does not depend on the repealed constitutional provision. The grand jury is a creature of common law and was adopted by statute in Connecticut long before it was mandated by the first constitution in 1818. In the preface to the first volume of the Connecticut Reports, Thomas Day wrote: "The first legislative provision for the attendance of a grand-jury was made in *July* 1643. At a session of the general court held at that time, an

act was passed, requiring a grand-jury of twelve persons to be summoned to appear at the court in *September* annually, or as often as the governour or court should think meet, to make presentment of the breaches of any laws or orders, or any other misdemeanours, that should come to their knowledge, within the territorial jurisdiction of the government. 1 *Col. Rec.* 109." Day, Preface to Connecticut Reports, 1 Conn. ix n.(*l*) (1817).

In 1750 the legislature authorized each town's grand jury "to Advise concerning such Breaches of Law as by their Office they are to Enquire after, and Present." Acts and Laws of 1750, p. 84. In 1784 the grand jury system took on a form more resembling that which the constitution would later embrace. The Acts and Laws of 1784, p. 93, provided: "That the Superior Court and County Courts in this State, shall have Power to order a Grand-jury of Eighteen of those chosen by the respective Towns in the County, or other sufficient Freeholders of the County where such Court is sitting, to be summoned, impannelled and sworn to enquire after and present such criminal Offenses as shall be cognizable by said Courts respectively, where there shall be Occasion. And no Person shall be held to Trial, or put to plead to any Complaint, Indictment or Accusation for a Capital Offense punishable with Death, unless a Bill of Indictment be found against such Person for such Crime, by a Grand-jury legally impannelled and sworn; and that no Bill of Indictment shall be presented by any Grand-jury so impannelled, unless twelve at least of the Jurors agree to it."

It was not until 1818 that the Connecticut constitution was adopted. There, in article first, § 9, the constitution embraced a grand jury provision in language almost identical to the existing statute: "And no person shall be holden to answer for any crime, the punishment of which may be death or imprisonment for life,

unless on a presentment or indictment of a grand jury; except in the land or naval forces, or in the militia, when in actual service in time of war, or public danger." See *State* v. *Kemp*, 126 Conn. 60, 9 A.2d 63 (1939); *In re Application of Clark*, 65 Conn. 17, 31 A. 522 (1894).

The repeal of the constitutional grand jury provision could only deprive the statutory grand jury provision of its force if the amendment prohibited the impaneling of grand juries. This it does not do. It merely substitutes a constitutionally mandated court determination of probable cause for what had been a constitutionally mandated grand jury indictment. Nothing in this amendment or elsewhere in the constitution prohibits the General Assembly from providing a criminal defendant the protection of grand jury inquiry in addition to the probable cause hearing should it so desire.

Therefore, until its repeal on May 26, 1983, § 54-45 validly authorized grand jury proceedings for all defendants charged with offenses punishable by death or life imprisonment. The amendment repealed the existing constitutional grand jury provision immediately on its certification on November 24, 1982, and the constitutional right to a probable cause hearing did not vest until May 26, 1983, the effective date of Public Act 83-210. Thus, those charged with such offenses in the interim (November 24, 1982, to May 26, 1983) were without any constitutional guarantee of a probable cause determination other than the nonadversary determination of probable cause to hold for trial, mandated by federal constitutional guarantees. See *Gerstein* v. *Pugh*, 420 U.S. 103, 119–23, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975). In that interim, however, such defendants retained an independent *statutory* right to a grand jury determination of probable cause. Accordingly, the

grand jury indictments handed down against these defendants before May 26, 1983 (Sanabria, Holder, Rivera, Richardson, and Casul) are valid.

### B

WHETHER THE GENERAL ASSEMBLY EXCEEDED ITS CONSTITUTIONAL AUTHORITY IN PUBLIC ACTS 1983, NO. 83-210

The second question reserved for our advice asks whether the General Assembly exceeded its constitutional authority in enacting that portion of Public Act 83-210 that provides probable cause hearings only for those "charged by the state on or after the effective date of this act [May 26, 1983]."

As previously set forth, the right to a probable cause hearing created by the amendment could not take effect until implementing procedures were prescribed. The question before us now is whether the constitutional right to a probable cause hearing vested immediately on May 26, 1983, for all defendants not yet indicted, or whether the General Assembly had the authority to designate the defendants or class of defendants to whom the constitutional right would apply by limiting the right to those charged on or after May 26, 1983.

By its terms, Public Act 83-210 provides that probable cause hearings must be afforded only those defendants charged by the state on or after May 26, 1983, with crimes punishable by death or life imprisonment. The defendants argue that under this statute defendants charged by information before May 26, 1983, but not indicted by that date would be denied a probable cause hearing even though the right vested on May 26, 1983. The defendants contend that the General Assembly exceeded its authority to enact implementing legislation for the amendment when it limited the right to probable cause hearings to those *charged* on or after

May 26, 1983. We agree and hold that as of May 26, 1983, any defendant then being held to answer for a crime punishable by death or life imprisonment, who had not yet been indicted by a grand jury, must be given before trial a probable cause hearing held in accordance with the procedures prescribed in Public Act 83-210.

"The constitution of the state, framed by a convention elected for that purpose and adopted by the people, embodies their *supreme original will* . . . . Whatever that supreme original will prescribes, the General Assembly, and every officer or citizen to whom the mandate is addressed, must do; and whatever it prohibits, the General Assembly, and every officer and citizen, must refrain from doing; and if either attempt to do that which is prescribed, in any other manner than that prescribed, or *to do in any manner that which is prohibited*, their action is repugnant to that supreme and paramount law, and invalid." (Emphasis in original.) *Opinion of the Judges of the Supreme Court as to Constitutionality of Soldiers' Voting Act*, 30 Conn. 591, 593–94 (1862). The amendment requires that those charged with offenses punishable by death or life imprisonment shall be given a hearing in probable cause.

As previously set forth, the amendment did not take effect until implementing procedures were prescribed. Thus, the constitutional right to a probable cause hearing did not vest for a reasonable, undetermined period of time while the General Assembly or the rules committee of the Superior Court acted. Once the legislature enacted those procedures, however, the constitutional right to a probable cause hearing vested immediately for all defendants who had not yet been indicted by a grand jury. The legislature did not have authority to make a distinction within the class of defendants to whom the constitutional right would apply based on the date of the state's charge. We hold,

therefore, that that portion of Public Act 83-210 that confers the right to a hearing in probable cause only upon those "charged by the state" on or after May 26, 1983, is unconstitutional and therefore invalid. The remainder of the act, however, is valid.[19] Thus, on May 26, 1983, the effective date of Public Act 83-210, *all* persons then being held for crimes punishable by death or life imprisonment, who had not yet been indicted by grand jury became entitled to a probable cause hearing before their cases went to trial, regardless of the dates on which they were arrested or charged by information.

The answer to question A is: No, the amendment is not self-executing to the extent of conferring a right to a probable cause hearing on all those charged with a crime punishable by death or life imprisonment who had not been indicted as of November 24, 1982; it is self-executing only to the extent of eliminating the constitutional right, not the statutory right, to a grand jury in such cases.

The answer to question B is: Yes, the General Assembly exceeded its authority in limiting the right to a hearing in probable cause to those "charged by the state" on or after May 26, 1983.

The appeal of Jose Alberto Casul is dismissed as moot.

No costs will be taxed to any party.

In this opinion the other judges concurred.

---

[19] Only that part of Public Act 83-210 that purports to confer a right to a probable cause hearing only on those charged on or after May 26, 1983, is unconstitutional. The substantive provisions of the statute are separable from that provision and remain valid. See *Seals* v. *Hickey,* 186 Conn. 337, 353–54, 441 A.2d 604 (1982); *State* v. *Sul,* 146 Conn. 78, 89, 147 A.2d 686 (1958); *Walsh* v. *Jenks,* 135 Conn. 210, 217, 62 A.2d 773 (1948); *Branch* v. *Lewerenz,* 75 Conn. 319, 324, 53 A. 658 (1902).