12-4268-cv
Vidro v. United States

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2012

(Argued: April 8, 2013        Decided: June 21, 2013)

Docket No. 12-4268-cv

------------------------------------------------------x

MONSERRATE VIDRO,

     Plaintiff-Appellant,

                    -- v. --

UNITED STATES OF AMERICA,

     Defendant-Appellee.

------------------------------------------------------x

B e f o r e :   WALKER, CHIN, Circuit Judges, RESTANI,[1] Judge.

     Monserrate Vidro appeals from the October 18, 2012 judgment of the District Court for the District of Connecticut (Underhill, Judge) granting the government's motion to dismiss his FTCA suit at the pleading stage. Vidro alleged that two federal law enforcement officers maliciously and falsely testified before a federal grand jury about his involvement in a drug conspiracy, causing the tortious intentional infliction of emotional distress. However, because Connecticut would recognize an absolute privilege for grand jury witness testimony and the officers would not be liable in tort

---

[1] The Honorable Jane A. Restani, of the United States Court of International Trade, sitting by designation.

for their statements, the United States is not vicariously liable under the FTCA. AFFIRMED.

JOHN R. WILLIAMS, John R. Williams and Associates LLC, 51 Elm St., New Haven, CT, for Plaintiff-Appellant.

SANDRA S. GLOVER (Alan M. Soloway, on the brief), Assistant United States Attorneys, of counsel to David B. Fein, United States Attorney, District of Connecticut, New Haven, CT, for Defendant-Appellee.

JOHN M. WALKER, JR., Circuit Judge:

In the October 18, 2012 judgment of the District Court for the District of Connecticut (Underhill, Judge), Monserrate Vidro's Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 et seq., suit was dismissed at the pleading stage.[2] Vidro had alleged that two federal law enforcement officers maliciously and falsely testified before a federal grand jury about his involvement in a drug conspiracy, causing the tortious intentional infliction of emotional distress.

We must address two questions of first impression in this circuit: (1) whether, in FTCA suits, the United States may assert all defenses available to private persons; and (2) whether grand jury witness testimony is absolutely privileged under Connecticut

---

[2] Under the FTCA, the United States assumes responsibility for government employees' state law torts. See, e.g., Devlin v. United States, 352 F.3d 525, 532 (2d Cir. 2003).

2

law. Although our analysis is different from that of the district court, we concur with its ultimate conclusion that, if its agents would enjoy immunity from suit under state tort law, the United States may also assert immunity in FTCA actions. Further, because Connecticut would recognize an absolute privilege for grand jury witness testimony, the United States is not vicariously liable under the FTCA for the officers' statements before the federal grand jury. The district court's order of dismissal is affirmed.

**BACKGROUND**

In his September 6, 2011 federal complaint for the state tort of intentional infliction of emotional distress, Vidro alleges that two law enforcement officers intentionally and falsely testified before a federal grand jury about his involvement in a drug conspiracy. Vidro further alleges that this resulted in his subsequent indictment, four-month detention, and attendant injuries. Specifically, Vidro states that he "suffered imprisonment, loss of liberty, public humiliation and disgrace, severe emotional distress and economic losses." J.A. 10-11.

On December 6, the government moved to dismiss the complaint on the grounds that it should be construed as a claim for false imprisonment and that it failed to make out such a claim. Vidro opposed the motion, arguing that the complaint properly stated a claim for intentional infliction of emotional distress. The government then filed a supplemental memorandum noting that the

Supreme Court's recent decision in Rehberg v. Paulk, 132 S. Ct. 1497 (2012), might be relevant insofar as it discussed justifications for grand jury witness immunity. At the district court's request, the parties then filed supplemental memoranda addressing the meaning of the FTCA phrase "judicial or legislative immunity." 28 U.S.C. § 2674.

On September 26, 2012, the district court granted the government's motion to dismiss the complaint on the basis that the United States was immune from suit. After finding § 2674 ambiguous and examining the limited legislative history, the district court concluded that the provision was meant to preserve all common law protections for officers. It further found that Connecticut common law implicitly recognizes absolute immunity for grand jury witness testimony and that the United States could therefore not be held liable for the officers' statements. This appeal followed.

**DISCUSSION**

We review a district court's grant of a motion to dismiss on the pleadings de novo, accept all factual claims in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. Anschutz Corp. v. Merrill Lynch & Co., 690 F.3d 98, 107 (2d Cir. 2012).

Vidro first argues that § 2674 is not ambiguous. In relevant part, the debated provision states:

4

With respect to any claim under this chapter, the United States shall be entitled to assert any defense based upon judicial or legislative immunity which otherwise would have been available to the employee of the United States whose act or omission gave rise to the claim, as well as any other defenses to which the United States is entitled.

28 U.S.C. § 2674. The district court determined that the phrase "judicial or legislative immunity" was ambiguous, as it might refer either to judges' and legislators' common law immunity from suit or to any judicially or legislatively created immunities.

If § 2674 is read in the context of the entire statute, however, there is no need to address the potential ambiguity of the debated phrase. Through the FTCA, the United States has waived its sovereign immunity for certain actions of its employees "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." Id. § 1346(b)(1) (providing for district court jurisdiction over the United States in tort actions). The United States is liable for these tort claims "in the same manner and to the same extent as a private individual under like circumstances." Id. § 2674.

As immunities and defenses are defined by the same body of law that creates the cause of action, the defenses available to the United States in FTCA suits are those that would be available to a private person under the relevant state law. See id. ("[T]he United States shall be entitled to assert . . . any other defenses to

5

which [it] is entitled."); Napolitano v. Flynn, 949 F.2d 617, 621 (2d Cir. 1991) (recognizing that state law defining a cause of action must also be the law defining the corresponding immunities and defenses); see also In re FEMA Trailer Formaldehyde Prods. Liab. Litig., 668 F.3d 281, 288 (5th Cir. 2012). Therefore, although we disagree with the district court about the need to evaluate the possible ambiguity of § 2674, we affirm its ultimate conclusion: In FTCA suits, the United States may assert common law defenses available to private individuals under relevant state law.

Vidro next asserts that Connecticut would not grant grand jury witness testimony absolute immunity. There is no directly relevant state case law, largely because grand juries as commonly understood were abolished in Connecticut by a constitutional amendment that took effect in November 1983. See Connecticut v. Sanabria, 474 A.2d 760, 774-75 (Conn. 1984). Vidro also argues that, at the very least, this issue should be certified to the Connecticut Supreme Court.

We nonetheless conclude that, were Connecticut courts to consider the matter, they would find statements made under oath by federal grand jury witnesses to be privileged. Connecticut courts have long held that "[p]articipants in a judicial process must be able to testify . . . without being hampered by fear of actions seeking damages for statements made . . . in the course of the judicial proceeding." Gallo v. Barile, 935 A.2d 103, 108 (Conn.

6

2007) (quotation marks and alterations omitted). This immunity is based on Connecticut's conclusion that "the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements." Id. Accordingly, Connecticut courts have long recognized an absolute privilege for witness testimony in judicial or quasi-judicial proceedings, provided that the statements are relevant to the subject of the controversy. See, e.g., id. (applying this protection to claims of intentional infliction of emotional distress); Simms v. Seaman, --- A.3d ---, No. 18839, 2013 WL 1943336, at *6-7 (Conn. May 21, 2013) (tracing the historical development of this privilege in Connecticut law).

"Judicial proceedings" have been defined to include "any hearing before a tribunal which performs a judicial function, ex parte or otherwise, and whether the hearing is public or not." Craig v. Stafford Constr., Inc., 856 A.2d 372, 376 (Conn. 2004) (quotation marks omitted). Although what constitutes a judicial or quasi-judicial proceeding has not been defined with precision, it has been interpreted broadly. See id. at 376-77 (observing that such proceedings include "lunacy, bankruptcy, or naturalization proceedings, and an election contest [and] extends also to the proceedings of many administrative officers, such as boards and commissions, so far as they have powers of discretion in applying the law to the facts which are regarded as judicial or quasi-

7

judicial, in character" (quotation marks omitted)). If a proceeding is not clearly judicial in nature, the Connecticut Supreme Court has outlined factors relevant to determining whether it is quasi-judicial:

> These factors include whether the body has the power to: (1) exercise judgment and discretion; (2) hear and determine or to ascertain facts and decide; (3) make binding orders and judgments; (4) affect the personal property rights of private persons; (5) examine witnesses and hear the litigation of the issues on a hearing; and (6) enforce decisions or impose penalties.

Id. at 377 (quotation marks omitted). Whether a statement is taken under oath is also relevant to whether it deserves an absolute privilege. See id.; Chadha v. Charlotte Hungerford Hosp., 865 A.2d 1163, 1171-72 (Conn. 2005) (discussing whether, under specific circumstances, affidavits qualify for the privilege).

Grand jury proceedings are unquestionably judicial or quasi-judicial in nature, see Abrahams v. Young & Rubicam Inc., 79 F.3d 234, 240 (2d Cir. 1996) (describing statements made to a grand jury as statements made in a judicial proceeding), and witness testimony under oath in such proceedings is certainly relevant to the tribunal's fact-finding process. Accordingly, we can conclude with confidence that Connecticut courts would extend the state's longstanding and well-established protections of statements made in such proceedings to grand jury witness testimony. As "sufficient precedents exist for us to make a determination," there is no need

8

to certify this question to the Connecticut Supreme Court. Amerex Grp., Inc. v. Lexington Ins. Co., 678 F.3d 193, 200 (2d Cir. 2012) (quotation marks and alteration omitted).

Our conclusion is bolstered by the fact that the public policy justifications underlying Connecticut's absolute immunity defense for statements made in judicial and quasi-judicial proceedings apply to federal grand jury testimony. See Gallo, 935 A.2d at 111 ("Ultimately, . . . the issue [in evaluating whether certain statements deserve absolute immunity] is whether the public interest is advanced."). As discussed in Rehberg, 132 S. Ct. 1497, there are strong policy justifications for absolute immunity for witness testimony in grand jury proceedings. First, "a witness' fear of retaliatory litigation may deprive the tribunal of critical evidence." Id. at 1505. Second, "the possibility of civil liability [is] not needed to deter false testimony . . . because other sanctions . . . provid[e] a sufficient deterrent." Id. Additionally, the public's interest in preserving grand jury secrecy counsels against anything less than absolute immunity for witness testimony, as the jurors' identities might be disclosed in the course of discovery in subsequent suits. Id. at 1509.

Based on Gallo, 935 A.2d 103, in which the Connecticut Supreme Court found that witness statements to an investigating police officer received only qualified immunity, Vidro argues that Connecticut courts are restricting the privilege. We disagree.

9

Under Connecticut law, statements with an attenuated connection to judicial proceedings receive only qualified immunity if they do not affect the fact-finding process of a tribunal. See Petyan v. Ellis, 510 A.2d 1337, 1341-42 (Conn. 1986) (noting that police officers sued for false arrests or "complaining witnesses" who initiate prosecutions are entitled only to qualified immunity). Accordingly, the Gallo court's holding was grounded in its determination that the public policy justifications for granting absolute immunity to statements made in judicial proceedings did not apply with equal force to statements made in the course of a police investigation. 935 A.2d at 111 ("There is no benefit to society or the administration of justice in protecting those who make intentionally false and malicious defamatory statements to the police."); see also id. at 112-13 (distinguishing Craig, 856 A.2d 372). As described above, however, there are significantly stronger policy reasons for protecting grand jury testimony. See Rehberg, 132 S. Ct. at 1507-09 (reasoning that the customary grant of only qualified immunity to "complaining witnesses" is irrelevant in the federal grand jury context).

Furthermore, as evidenced by the Connecticut Supreme Court's recent decision in Simms, 2013 WL 1943336 (holding that attorneys enjoy absolute immunity from suits for fraud or intentional infliction of emotional distress based on their conduct during

10

judicial proceedings), Connecticut courts show no intention of restricting the privilege's traditionally broad scope.

**CONCLUSION**

For the foregoing reasons, the district court's dismissal of Vidro's complaint is AFFIRMED.